Bonnie MacNaughton (CA State Bar No. 107402)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, 33rd Floor
Seattle, Washington 98104-1610
Telephone:    (206) 662-3150
Facsimile:    (206) 757-7700
Email: bonniemacnaughton@dwt.com

Attorneys for Meta Platforms, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| META PLATFORMS, INC., a Delaware Corporation,<br><br>                Plaintiff,<br><br>        v.<br><br>IDRISS QIBAA, and UNLOCKED4LIFE, LLC<br><br>                Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

DAVIS WRIGHT TREMAINE LLP

COMPLAINT

Plaintiff Meta Platforms, Inc. ("Meta") alleges the following:

## I.    INTRODUCTION

1.    Since no later than March 3, 2023, and continuing until at least August, 14, 2024, Defendants Idriss Qibaa ("Qibaa") and UNLOCKED4LIFE LLC ("Unlocked," and with Qibaa, "Defendants") sold unauthorized Instagram services including (a) the ability to disable user accounts; (b) user account reinstatement services intended to circumvent enforcement actions taken by Meta in response to users who violated the Instagram Terms of Use ("Terms") and other rules that govern access to and use of Instagram, including Instagram's Community Standards (collectively, "Instagram Terms and Policies"); and (c) fake engagement services intended to artificially inflate followers on Instagram user accounts, among other things.  Defendants offered similar services on X (formerly known as Twitter), YouTube, TikTok, Snapchat, and Telegram.

2.    On February 9, 2024, in an effort to stop Defendants' unlawful conduct, Meta sent a cease-and-desist letter to Defendants, revoked their licenses to access Facebook and Instagram, and disabled their accounts.  Subsequently, Defendants created new Instagram accounts, which Defendants used to further promote their unauthorized services.

3.    Defendants' conduct was not authorized by Meta and violates the Instagram Terms as well as the California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502 (the "CDAFA").  Accordingly, Meta brings this action for damages and injunctive relief.

## II.    PARTIES

4.    Plaintiff Meta is a Delaware corporation with its principal place of business in Menlo Park, San Mateo County, California.

5.    Defendant Idriss Qibaa is a resident of Las Vegas, Nevada, and according to public records, he is the Managing Member of Defendant Unlocked.  Ex. A.  In a 2024 podcast, Qibaa described himself as a "professional when it comes to the banning and unbanning of Instagram accounts."[1]  On August 6, 2024, Qibaa was indicted by a grand jury in the District of Nevada and charged with two counts of violating 18 U.S.C. § 875 for sending messages threatening to injure

---

[1] *See* ¶ 31 below.

or kill two victims. *United States of America v. Idriss Qibaa*, Case 2:24-cr-00175-RFB-MDC (D. Nev. Aug. 6, 2024). Ex. B. The government's complaint includes multiple allegations that Qibaa offered and sold unauthorized Instagram services and harassed Instagram users. That case remains pending and is scheduled for trial in May 2025.[2]

**Figure 1: Photo of Idriss Qibaa From @unlockedforlife OnlyFans Account Profile Picture**



6. Defendant Unlocked is a limited liability company registered in Henderson, Nevada, which offered and sold unauthorized Instagram account services including services to disable Instagram user accounts, among other services directed at Instagram users. Unlocked offered its unauthorized Instagram services on its domain unlocked4life.com.

---

[2] Qibaa appears to have signed a plea agreement as of February 7, 2025, although his trial remains on calendar as of the date of this Complaint. *See United States of America v. Idriss Qibaa*, Case 2:24-mjcr-00629-BN00175-RFB-MDC (D. Nev.) (Dkt. 36-37).

DAVIS WRIGHT TREMAINE LLP

2

COMPLAINT

7.     Meta is informed and believes that at all times material to this action, Defendants were the agents, employees, and/or co-conspirators of one another and were acting within the scope of such agency, employment, and/or conspiracy.  Each Defendant acted with the knowledge, permission, and consent of the other Defendant; and each Defendant aided and abetted the other Defendant in the acts or omissions alleged in this Complaint.

8.     Meta is informed and believes that there exists now and at all times material to this action a unity of interest between Unlocked on the one hand and Qibaa on the other hand such that any individuality and separateness between these Defendants has ceased, and these Defendants are the alter egos of each other.  Adherence to the fiction of a separate existence of these Defendants being distinct from each other would promote form over substance and cause injustice.

## III.    JURISDICTION AND VENUE

9.     The Court has jurisdiction over all the causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1332 because complete diversity between Meta and Defendants exists and because the amount in controversy exceeds $75,000.

10.     The Court has personal jurisdiction over Defendants because Defendants created, controlled, and used multiple Instagram accounts and thereby had notice of and agreed to the Terms which contain a forum selection clause that requires Defendants to submit to the personal jurisdiction of the United States District Court for the Northern District of California or a state court located in San Mateo County.

11.     The Court also has personal jurisdiction because Defendants knowingly directed and targeted their conduct at Meta—which has its principal place of business in California— including by entering a contractual relationship centered in California.  Defendants provided unauthorized account reinstatement services that caused an Instagram account belonging to at least one user located in California to be disabled.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as the threatened and actual harm to Meta occurred in this District.  Additionally, by agreeing to the forum selection clause, Defendants agreed that venue in this Court is proper.

COMPLAINT

13.     Pursuant to Civil L.R. 3-2(c), this case may be assigned to either the San Francisco or Oakland division because Meta is located in San Mateo County.

## IV.     FACTUAL ALLEGATIONS

### A.     Background on Meta Products

14.     Meta owns and operates Instagram, which is a free photo and video sharing service, website, and mobile application.  Instagram users can upload photos and videos to Instagram and share them with others.  They can also view, comment, and like posts shared by others on Instagram.

15.     Meta also owns and operates Facebook, which is an online service that is available on computers and mobile devices which helps give people the power to build community, share life's moments and discuss what's happening, and discover and connect to interests through Feed, Reels, Stories, Groups, Marketplace, and more.

16.     Meta also owns WhatsApp, an encrypted communication service available on mobile devices and desktop computers.  WhatsApp relies on Meta's infrastructure such as servers to support people around the world with fast and reliable services.

### B.     Instagram's Terms

17.     Everyone who creates an account or uses Instagram must agree to Instagram's Terms and Policies and therefore has notice of the Terms.

18.     The Terms prohibit users from doing "anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose."

19.     The Terms prohibit accessing or attempting to access accounts in unauthorized ways.

20.     The Terms prohibit users from doing "anything to interfere with or impair the intended operation of [Instagram].  This includes misusing any reporting, dispute, or appeals channel, such as by making fraudulent or groundless reports or appeals."

21.     The Terms state that a person cannot use Instagram if Meta has "previously disabled your account for violation of law or any of our policies."

COMPLAINT

**C.      Defendants Agreed to the Instagram Terms**

22.      At all relevant times, Defendants had notice of and were bound by the Terms.

23.      Between May 3, 2012, and July 23, 2024, Defendants created and controlled multiple Instagram accounts including:

a.      Defendants created an Instagram account on May 3, 2012, with the name samisavesme.

b.      Defendants created an Instagram account on September 19, 2012, with the name idrissqibaa.

c.      Defendants created an Instagram account on August 22, 2021, with the name unlockedforlife.

d.      Defendants created an Instagram account on December 18, 2021, with the name brighteroadsjewelry.

e.      Defendants created an Instagram account on December 18, 2021, with the name defendthecops1.

f.      Defendants created an Instagram account on March 7, 2023, with the name lowespacks.

g.      Defendants created an Instagram account on March 8, 2023, with the name wwbmoney1.

h.      Defendants created an Instagram account on March 28, 2023, with the name unlockedback.

i.      Defendants created an Instagram account on April 11, 2023, with the name unlocked4life.

j.      Defendants created an Instagram account on April 11, 2023, with the name unbanmyinsta.

k.      Defendants created an Instagram account on April 12, 2023, with the name unlockmyinsta.

l.      Defendants created an Instagram account on May 13, 2023, with the name skinnypacks.

COMPLAINT

m.    Defendants created an Instagram account on June 30, 2023, with the name socialunlocking.

n.    Defendants created an Instagram account on July 13, 2023, with the name lakimiipainless1.

o.    Defendants created an Instagram account on September 20, 2023, with the name unlockednews.

p.    Defendants created an Instagram account on September 25, 2023, with the name unlockedgolfing.

q.    Defendants created an Instagram account on January 15, 2024, with the name unlocked4lifes.

r.    Defendants created an Instagram account on January 15, 2024, with the name unlockedbacks.

s.    Defendants controlled and used an Instagram account with the username idrissocean starting no later than April 1, 2024, and continuing to about April 8, 2024, when Meta disabled the account.

t.    Defendants created an Instagram account on July 17, 2024, with the name unlockedreborn.

u.    Defendants created an Instagram account on July 19, 2024, with the name paid4lifes.

**D.    Meta's Enforcement Measures**

24.    Meta has a variety of measures and tools in place to enforce the Instagram Terms and Policies.

25.    **Content Removal:** Meta uses technology and human review teams to detect and review potentially violating content and accounts on Instagram.  Users may also report abusive content or spam to Instagram through the platform using designated reporting forms.  Meta's technology proactively detects and removes violating content from Instagram and sends potentially

COMPLAINT

DAVIS WRIGHT TREMAINE LLP

violating content to review teams to check and take action if needed.[3]  If Meta determines that an Instagram user has violated the Terms and Policies, the Terms give Meta the right to "remove or restrict any content or information you share on the Service."

26.    **Account Access Restriction and Termination:** The Terms give Meta the right to "terminat[e] or disabl[e] your access to [Instagram] to protect [Meta's] community or services." Meta may also restrict certain Instagram features if it appears that an account is not following the Terms and Policies.

27.    **Appeal Channels:** If Meta disables or restricts an Instagram account and the user believes the enforcement was by mistake, the user may appeal Meta's enforcement.  Users whose accounts are disabled will automatically receive instructions about how to appeal the enforcement the next time they attempt to access their Instagram account.  Users whose accounts are restricted can appeal those restrictions in the Instagram App using the Account Status tool.  The Terms prohibit users from misusing all appeal and reporting channels.  Only Meta is authorized to reinstate accounts or account access or lift account restrictions after an enforcement.

**E.    Defendants Offered for Sale and Sold Instagram Account Disablement Services in Violation of the Instagram Terms**

28.    Beginning no later than March 3, 2023, and continuing until at least August 14, 2024, Defendants violated the Instagram Terms by offering for sale and selling services to disable Instagram user accounts.

29.    Defendants used their Instagram accounts to create multiple posts promoting their ability to disable Instagram user accounts.  Defendants referred to their ability to disable an Instagram user account by using the tombstone and skull and crossbones emojis and claimed to be able to disable "Any IG [account] same day" and directed customers to "D[irect] M[essage] to get started."

---

[3] Information regarding Meta's content removal measures is available at https://transparency.meta.com/enforcement/.

COMPLAINT

DAVIS WRIGHT TREMAINE LLP

**Figure 2: Defendants' March 3, 2023, Instagram Post on their @unlockedforlife Instagram Account**



30.     On information and belief, on or about November 14, 2023, Defendants submitted or caused to be submitted a deceptive and misleading request through Meta's external reporting channel falsely claiming that an Instagram Account (Account A) was violating Instagram's Terms and Policies.  The false and misleading report caused Account A to be disabled on November 14, 2023.  Meta reinstated Account A on November 15, 2023.  Defendants subsequently created or caused to be created multiple Instagram posts claiming credit for Account A's disablement.  For example, on January 7, 2024, Defendants created or caused to be created an Instagram post with a screenshot showing Account A was disabled on November 14 for violations of Instagram's Community Guidelines, and stated Defendants could get "ANY GRAM GONE SAME/NEXT DAY."

COMPLAINT

DAVIS WRIGHT TREMAINE LLP

**Figure 3: Defendants' January 7, 2024, Instagram Post on their @unlockmyinsta Instagram Account**



31.    On January 18, 2024, Defendant Qibaa appeared on the "No Jumper" podcast in an episode titled "UNLOCKED Exposes The Instagram Ban/Unban Game & Making Millions off D*** Dealers."  On the podcast, Defendant Qibaa promoted Unlocked and stated he profits by extorting certain Instagram users by disabling their user accounts and charging those users to reinstate their accounts.  Defendant Qibaa claimed that over 200 people pay him monthly to maintain access to their user accounts and that he makes more than $600,000 a month offering these services.  As of February 13, 2025, the podcast is available on YouTube at https://www.youtube.com/watch?v=mr71K-Hy-xU and was formerly available on Defendants' website before that website was taken down.

9

**Figure 4: Screenshot from YouTube of No Jumper Podcast Episode "UNLOCKED Exposes The Instagram Ban/Unban Game & Making Millions off D*** Dealers"**



32.    Defendants also promoted their account disablement services on Unlocked's website and their Telegram channel.  On April 24, 2024, in a post to their Telegram channel, Defendants directed customers seeking Instagram banning services to "[s]end a screenshot of the target.  We need to see the page to quote smoking it."  Ex. C.

33.    On information and belief, on or about April 25, 2024, Defendants submitted or caused to be submitted a deceptive and misleading request through Meta's external reporting channel, falsely claiming that an Instagram account (Account B) was violating Instagram's Terms and Policies.  The false and misleading report caused Account B to be disabled on April 25, 2024.  Meta reinstated Account B later that same day.  On or about April 27 and June 23, Defendants posted to their Telegram channel, "Unlocked For Life," taking credit for disabling Account B and boasted that they "banned [Account B's] IG."

COMPLAINT

**F.      Defendants Offered for Sale Other Unauthorized Instagram Services in Violation of the Instagram Terms**

34.      In addition to selling the ability to disable Instagram user accounts, Defendants offered a menu of other services that violated Instagram's Terms and Policies.  For example, Defendants sold account reinstatement services that re-enabled disabled or otherwise restricted user accounts and sold fake Instagram engagement.  Defendants promoted the sale of these services on their Instagram accounts, Unlocked's website, and on their Telegram account.

35.      On or about January 9, 2024, Defendants created or caused to be created an Instagram post on Instagram account @unlockmyinsta, that promoted Unlocked's services including Instagram account bans, account reinstatements, and fake engagement, among other services.  Defendants also claimed to provide similar services directed to users of other platforms including X (formerly known as Twitter), YouTube, TikTok, and Telegram.

**Figure 5: Defendants' January 9, 2024, Instagram Post on Defendants' @unlockmyinsta Instagram Account**



COMPLAINT

DAVIS WRIGHT TREMAINE LLP

36.     On January 9, 2024, Defendants also created or caused to be created an Instagram post offering their "UNLOCKED PROTECTION," a "whitelist[ing]" service for Instagram, Snapchat, and Telegram Users.   The service, which cost $750 per year, purported to provide customers "one free unban," "10k real followers delivered instantly," restoration of hacked or lost accounts, and the ability to "post whatever you want," among other things.

**Figure 6: Defendants' January 9, 2024, Instagram Post on Defendants' @unlockmyinsta Instagram Account**



37.     Through Unlocked's website Defendants offered to provide services to reinstate disabled or otherwise restricted user accounts.   As of at least January 2024, Defendants' website directed customers to "DM TO GET BACK YOUR . . . GRAMS," which meant customers should direct message Defendants to re-enable a disabled Instagram account.

COMPLAINT

**Figure 7: Defendants' Promotion of Instagram Reinstatement Services on Unlocked's Website**



38.     Through Unlocked's website, unlocked4life.com, Defendants offered to artificially inflate the number of followers on Instagram accounts.  Defendants offered to provide 10,000 followers for $200, 25,000 followers for $350, 50,000 followers for $600, and 100,000 followers for $900.

COMPLAINT

**Figure 8: Defendants' Promotion of Fake Engagement Services on Unlocked's Website**



39.    Defendants also offered their customers the opportunity to join their "ELITE SALES GROUP" (called "TEAM UNLOCKED") where members would be provided with access to sell Unlocked's unauthorized Instagram services, among other things.  To access TEAM UNLOCKED, customers were asked to pay a one-time fee of $7,500 to Defendants.  According to Defendants, members would also be provided with fake engagement including 25,000 followers and "24/7 ACCESS" to Defendant Qibaa, among other things.

**G.    Meta's Enforcement Actions Against Defendants**

40.    On February 9, 2024, Meta sent a cease-and-desist letter to Defendants for violating Instagram's Terms.  Ex. D.  At that time, Meta also disabled all known Facebook and Instagram accounts associated with Defendants.

41.    In the cease-and-desist letter, Meta provided the URL where the Instagram Terms can be viewed and demanded that Defendants stop violating the Instagram Terms, including by offering unauthorized Instagram account services to disable Instagram user accounts; reinstating disabled or otherwise restricted user accounts; and artificially inflating followers on Instagram. The cease-and-desist letter also informed Defendants that Meta had revoked Defendants' licenses

COMPLAINT

to access Facebook and Instagram and that Defendants were no longer authorized to access Facebook or Instagram "for any reason whatsoever." Ex. D.

42.    Beginning on or about April 1, 2024, after Meta revoked Defendants' access to use Facebook and Instagram, Defendants took control of an Instagram user account with the username "nabdjbbzbsjsjsjsb."  Defendants changed the username of the account to "idrissocean."  Meta disabled Defendants' idrissocean account on or about May 8, 2024.

43.    As detailed in paragraph 33, on or about April 25, 2024, after receiving the cease-and-desist letter, Defendants submitted or caused to be submitted a deceptive and misleading request through Meta's external reporting channel, which resulted in Meta disabling Account B.

44.    On July 17, 2024, Defendants created an Instagram user account with the username "unlockedreborn."  On July 21, 2024, Defendants created an Instagram post promoting and directing users to a Telegram channel where Defendants sold unauthorized Instagram account services.  On or about July 22, 2024, Meta disabled the "unlockedreborn" user account.

45.    On July 19, 2024, Defendants created an Instagram user account with the username "paid4lifes."  On or about July 23, 2024, Meta disabled the "paid4lifes" account.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Breach of Contract)

46.    Meta realleges and incorporates all preceding paragraphs here.

47.    Since no later than May 3, 2012, Defendants created and used multiple Instagram accounts, thereby receiving notice of and agreeing to the Instagram Terms.

48.    The Terms constitute a valid and enforceable agreement between Defendants and Meta.

49.    Meta has performed all conditions, covenants, and promises required of it in accordance with the Terms by providing the Instagram service.

50.    The Terms prohibit users from (1) doing "anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose"; (2) "misusing any reporting, dispute, or appeals channel, such as by making fraudulent or groundless reports or appeals"; (3) doing

15

COMPLAINT

"anything to interfere with or impair the intended operation of [Instagram]"; and (4) accessing or attempting to access accounts in unauthorized ways. Defendants breached these Terms by offering for sale and selling unauthorized Instagram services including services to disable Instagram user accounts, as well as misusing Meta reporting, dispute, or appeal channels in furtherance of their scheme.

51. The Terms also prohibit someone from using Instagram if Meta has previously disabled that person's user account for violating any of Meta's Terms and Policies. Defendants breached this Term by creating multiple new Instagram accounts and continuing to use Instagram after February 9, 2024, when Meta disabled Defendants' Instagram accounts and sent Defendants a cease-and-desist letter informing them that they were no longer authorized to access Instagram.

52. Defendants' breaches have caused Meta to incur damages including damages attributable to the efforts and resources it used to investigate and remediate Defendants' conduct in an amount to be proven at trial.

53. Meta likewise seeks injunctive relief. As a direct result of Defendants' unlawful actions, Meta has suffered irreparable harm for which there is no adequate remedy at law and which will continue unless Defendants' actions are enjoined.

54. Defendants' acts as alleged herein also constitute unjust enrichment of Defendants at Meta's expense. Defendants received a benefit and profited by violating the Instagram Terms and Policies. But for Defendants' violations of the Instagram Terms and Policies, they would not have obtained such profits. Defendants' retention of the profits derived from their breach of contract would be unjust. Meta seeks an accounting and disgorgement of Defendants' ill-gotten profits in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
(Computer Data Access and Fraud Act, California Penal Code § 502)

55. Meta realleges and incorporates all preceding paragraphs here.

56. Defendants violated California Penal Code § 502.

57. Defendants knowingly and without permission used or caused to be used Meta's computer services, as defined by Penal Code § 502(b)(4), in violation of Penal Code § 502(c)(3)

COMPLAINT

DAVIS WRIGHT TREMAINE LLP

1   by accessing and using Instagram to promote their unauthorized services after Meta sent a cease-

2   and-desist letter and revoked Defendants' access to Instagram on February 9, 2024.

3       58.    Defendants knowingly and without permission accessed Meta's computers,

4   computer systems, and computer networks, including those located in California, in violation of

5   California Penal Code § 502(c)(7).  Defendants accessed Meta's computers, computer systems,

6   and computer network, including to promote their unauthorized services after Meta sent a cease-

7   and-desist letter to Defendants and revoked Defendants' access to Instagram on February 9, 2024.

8       59.    Defendants' access and use of Instagram was without permission because Meta

9   revoked Defendants' access to Instagram and sent a cease-and-desist letter to Defendants on

10  February 9, 2024.

11      60.    Defendants' actions caused Meta to incur losses and damages, including among

12  other things the expenditure of resources to investigate and remediate Defendants' conduct.

13  Because Meta suffered damages and a loss as a result of Defendants' actions and continues to

14  suffer damages as a result of Defendants' actions, Meta is entitled to compensatory damages,

15  attorneys' fees, and any other amount of damages proven at trial, as well as injunctive relief under

16  California Penal Code § 502(e)(1) and (2).

17  ### VI.    REQUEST FOR RELIEF

18  WHEREFORE, Meta requests a judgment against Defendants as follows:

19  1.    That the Court enter judgment against Defendants that Defendants have:

20      a.    Breached their contracts with Meta in violation of California law; and

21      b.    Violated the California Comprehensive Computer Data Access and Fraud

22  Act, in violation of California Penal Code § 502;

23  2.    That the Court enter a permanent injunction enjoining and restraining Defendants

24  and their agents, servants, employees, successors, and assigns, and all other persons acting in

25  concert or conspiring with any of them or who are affiliated with Defendants from:

26      a.    Accessing, attempting to access, and using Meta's services, platforms, and

27  computer systems, including Instagram, Facebook, and WhatsApp, for any purpose

28  whatsoever;

DAVIS WRIGHT TREMAINE LLP

17

COMPLAINT

b.      Creating or maintaining any Instagram accounts in violation of the Instagram Terms of Use;

c.      Engaging in any activity or facilitating others to do the same that violates the Instagram Terms of Use;

d.      Soliciting third parties to access Meta's platforms and computer systems on Defendants' behalf;

e.      Engaging in any activity that disrupts, diminishes the quality of, interferes with the performance of, or impairs the functionality of Meta's computers, computer system, and computer network or service; and

f.      Engaging in activity that violates the California Comprehensive Computer Data Access and Fraud Act (California Penal Code § 502);

3.      That Meta be awarded damages including but not limited to compensatory, statutory, and punitive damages, and an accounting and disgorgement of profits, as permitted by law and in such amounts to be proven at trial;

4.      That Meta be awarded its reasonable costs including reasonable attorneys' fees;

5.      Pre- and post-judgment interest as allowed by law; and

6.      All other equitable and legal relief the Court deems just and proper.

**PLAINTIFF RESPECTFULLY DEMANDS A JURY TRIAL.**

DATED: February 18, 2025                    Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP
BONNIE MACNAUGHTON

By:  _/s/ Bonnie MacNaughton_
        Bonnie MacNaughton

Attorneys for Meta Platforms, Inc.

COMPLAINT

DAVIS WRIGHT TREMAINE LLP

# EXHIBIT A

## Entity Information

### Entity Information

**Entity Name:**

UNLOCKED4LIFE LLC

**Entity Number:**

E37127702023-3

**Entity Type:**

Domestic Limited-Liability Company (86)

**Entity Status:**

Default

**Formation Date:**

12/22/2023

**NV Business ID:**

NV20232992140

**Termination Date:**

**Annual Report Due Date:**

12/31/2024

**Compliance Hold:**

**Series LLC:**

☐ **Restricted LLC:** ☐

### Registered AGENT INFORMATION

**Name of Individual or Legal Entity:**

Virtual Post Solutions, Inc.

**Status:**

Active

**CRA Agent Entity Type:**

**Registered Agent Type:**

Non-Commercial Registered Agent

**NV Business ID:**

**Office or Position:**

**Jurisdiction:**

**Street Address:**

1887 Whitney Mesa Dr. #5251, Henderson, NV, 89014, USA

**Mailing Address:**

**OFFICER INFORMATION**

☐ **View Historical Data**

| Title | Name | Address | Last Updated | Status |
|-------|------|---------|--------------|--------|
| Managing Member | Idriss Qibaa | 1887 WHITNEY MESA DR Unit 1115, Henderson, NV, 89014, USA | 12/22/2023 | Active |

**Page 1 of 1, records 1 to 1 of 1**

Filing History          Name History          Mergers/Conversions

Return to Search          Return to Results

# EXHIBIT B

JASON M. FRIERSON
United States Attorney
District of Nevada
Nevada Bar Number 7709
ROBERT KNIEF
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Tel: (702) 388-6336
Robert.Knief@usdoj.gov
*Attorneys for the United States*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>IDRISS QIBAA,<br><br>Defendant. | Case No. 2:24-mj-00629-BNW<br><br>**CRIMINAL COMPLAINT**<br><br>**COUNT ONE**<br>18 U.S.C. § 875(c) – Interstate Communications |

BEFORE the United States Magistrate Judge, Las Vegas, Nevada, the undersigned Complainant, being first duly sworn, deposes and states:

### COUNT ONE
*Interstate Communications*

On or about July 19, 2024, in the State and Federal District of Nevada and elsewhere,

**IDRISS QIBAA,**

defendant herein, knowingly transmitted in interstate commerce from the State of Nevada to the State of California, text message communications containing threats to injure and kill T.C. and members of T.C.'s family, all in violation of Title 18, United States Code, Section 875(c).

### COUNT TWO

*Interstate Communications*

On or about July 24, 2024, in the State and Federal District of Nevada and elsewhere,

**IDRISS QIBAA,**

defendant herein, knowingly transmitted in interstate commerce from the State of Nevada to the State of California, text message communications containing threats to injure and kill M.B., all in violation of Title 18, United States Code, Section 875(c).

## PROBABLE CAUSE AFFIDAVIT

Your Complainant, as a Special Agent with the Federal Bureau of Investigation, states the following as and for probable cause:

1.      Your Complainant is a Special Agent with the Federal Bureau of Investigation (FBI), has been so employed since September 2021. As an FBI Special Agent, your Complainant is assigned to the FBI's Las Vegas Violent Crimes Task Force and is responsible for investigating a variety of violent crimes, to include: bank robbery, kidnapping, extortion, Hobbs Act robbery, carjacking, assaults and murders of federal officers, racketeering related violent offenses, as well as long-term investigations into the activities and operations of career criminals, criminal enterprises, drug trafficking organizations, and violent street gangs. Your Complainant has experience in conducting criminal investigations, including the investigation of criminal groups and conspiracies, as well as the collection of evidence and the identification and use of witnesses.

## FACTS ESTABLISHING PROBABLE CAUSE

2.     On April 1, 2024, The Federal Bureau of Investigation was made aware of an extortion/threatening communications scheme being perpetrated by IDRISS QIBAA[1] (QIBAA) against victims located in Nevada, California, Washington, New York, and Florida. QIBAA is known by pseudonyms to include "Dani" and "Unlocked." QIBAA maintains a presence on social media and his website, Unlocked4life.com, where he advertises his services of being able to ban/unban social media accounts on Instagram, SnapChat, Telegram, and TikTok. Unlocked4life.com is a website QIBAA operates that has several posts of accounts QIBAA has been able to lock out in the past to include @EmoneyEmpire, "Cali Plug," "Skunk LA," and "HARD_BODY_KID." Unlocked4life.com also offers a service where customers can purchase "TLO"[2] which includes the personal identifying information of someone that can be posted online (doxing). Unlocked4life.com had posted two examples of what was referred to as "TLO" information that include names, addresses, Social Security account numbers, and dates of birth of individuals. Accuracy of this information was validated using law enforcement database Accurint/LexusNexus. Another service offered by Unlocked4life.com is the ability to apply "scam" tags to any Telegram accounts. One example posted shows a "scam"[3] tag on the account "FREE SIGNALS."

3.     On January 18, 2024, QIBAA appeared on a podcast called "No Jumper" hosted by "Adam22." During this podcast, QIBAA outlined an extortion scheme he has perpetrated against multiple victims. QIBAA stated he profits by locking victims out of

---

[1] QIBAA is a Moroccan national who is in the United States legally but is not a citizen. On multiple occasions through different means, QIBAA has stated if he feels any law enforcement pressure or is arrested and makes bail, he will flee back to Morocco and "live like a king."

[2] TLO is an acronym for TransUnion Locator Services which is a skiptrace database. A skiptrace database collects and stores information about individuals to help find their current location. TLO, now known as TransUnion TLOxp, is widely used by law enforcement agencies, private investigators, and skiptracers.

[3] A scam tag is a notation attached to an account indicating it may be being used to scam other people.

3

their social media accounts on Instagram and charges the victims to unlock the account. QIBAA stated he has over 200 people who pay him monthly to maintain access to their accounts claiming he makes more than $600,000 a month. During the podcast, "Adam 22" stated, "Well it strikes me that the smart people no offense caliplug, but I feel like the smart people would not admit that they've spent money on it because I- like I've talked to stars who have told me that they've paid to get it back 20 times over and over and over they just have to keep paying to get it back – and I'm like you realize what's happening to you right like the same person that's getting you it back is" to which QIBAA responds, "You're getting extorted."

## VICTIM 1

4.      J.T. is a self-employed social media influencer who utilizes platforms such as Instagram. J.T.'s Instagram accounts "theblacklistxyz" and "Caliplug" reported primarily on the cannabis industry and had approximately 500,000 followers. J.T. was highly dependent on these Instagram accounts for income and success in his businesses.

5.      J.T. was introduced to "Dani" who he later learned to be QIBAA. QIBAA had an Instagram account called "Unlocked4life," which advertised services to include blocking/unlocking social media accounts as well as being able to procure social media handles that had been restricted.  J.T. asked QIBAA for a quote to obtain a username. QIBAA quoted J.T. a price of between $4,000 and $5,000. J.T. declined QIBAA's services.

6.      When J.T. did not purchase the username, QIBAA took offense and began to threaten J.T.  QIBAA told J.T. that J.T. had wasted QIBAA's time, blocked J.T.'s Instagram pages, and demanded $10,000 to reinstate it. J.T. offered QIBAA $8,500 to reinstate the account.  An offer QIBAA accepted.  J.T. paid the $8500 in cash and J.T.'s

4

Instagram account was reinstated. J.T. attempted to maintain a civil relationship with QIBAA.

7.    On or about August 2023, QIBAA asked J.T. if J.T. would promote QIBAA's Instagram page. J.T. agreed without realizing QIBAA was extorting and threatening customers QIBAA came in contact with. J.T. confronted QIBAA once customers made J.T. aware of QIBAA's activities. QIBAA was irate with J.T.

8.    In December 2023, QIBAA called J.T. and threated to destroy him and his family. QIBAA threatened to call J.T.'s ex-wife's lawyer and CPS on his children. QIBAA told J.T. he was extorting him for $10,000.  J.T. then cut off all communication with QIBAA.

<u>Messages J.T. and family received from QIBAA</u>



<u>VICTIM 2</u>

5

9.      A.T. was a San Diego based businessman who came to know QIBAA in approximately April 2024. A.T. paid $25,000 to purchase the rights to an Instagram handle "@ace" from QIBAA.  A.T. never received the rights or his money back. After the failed transaction between A.T. and QIBAA, A.T. attempted to pay QIBAA $10,000 to leave A.T. alone. QIBAA refused and demanded $100,000 instead. A.T. ceased all contact with QIBAA at that point.

10.      A.T. started to receive threatening communications from 424-977-1439[4] as frequent as every other day. The caller made threats to shoot or injure A.T.'s daughter, fiancé, dog, business partners and their families.

<u>VICTIM 3</u>

11.      E.H. was a journalist and comedian who previously worked for a widely known entertainer. E.H. operated an Instagram account called @*****post[5] and had approximately 195,000 followers.  That site was blocked.  E.H. was contacted by E.C. who informed E.H. that a dentist in California who had previously treated the widely known entertainer was the person who hired "Unlocked4Life" to target E.H.'s Instagram account. E.C. provided E.H. with screenshots of messages between them. The messages start by saying "Yo its Idriss."

12.      E.H. was later contacted by "Unlocked" from cellular number 424-359-9722[6] which told her to search "Unlocked no jumper" on Youtube to prove who he was. E.H. received more than 2,000 SMS messages to spam her phone. "Unlocked" told E.H. he had

---

[4] This number has no identifiable subscriber.
[5] The first name of the entertainer is withheld for privacy considerations.
[6] This number is for a prepaid phone with no listed subscriber.

her Social Security account number and would "blast it out." "Unlocked" also told E.H. she needed to pay $20,000 to get her Instagram account back and stop being attacked.

<u>Messages E.H. and E.C. and family received from QIBAA</u>

  

<u>VICTIM 4</u>

13.    R.B. operated an Instagram account "@OutlawArchive" which was disabled for unknown reasons. An unknown user on Telegram messaged R.B. and instructed him to contact "IDRISS QIBAA" to inquire about recovering his account. R.B. contacted QIBAA and QIBAA advised R.B. it would cost approximately $12,000 to recover the account.

14.    On May 30, 2023, R.B. and QIBAA were scheduled to have dinner to discuss recovering his R.B.'s account. R.B. cancelled the dinner which upset QIBAA. QIBAA sent several threatening communications to R.B. to include "you'll learn..and not done w u just been busy." On June 1, 2024, QIBAA sent R.B. a .pdf file which contained

R.B.'s personal identifying information to include his Social Security account number, current address, past addresses, and stated, "posting now."

15.    Special Agent Ian Wendelboth searched Unlocked4life.com and identified a document (TLO) that included the personal identifying information that was reported by R.B. This document included R.B.'s Social Security account number, date of birth, phone numbers and several known addresses.

16.    R.B. filed and was granted a restraining order against QIBAA in Los Angeles County Superior Court. In July 2024, QIBAA was made aware of the order and contacted R.B. QIBAA sent threatening texts from 424-359-9722 to include "Cute restraining order.. last I checked you're still gonna die." On the Telegram account "UNLOCKED UNCENSORED" a post stated, "$50,000 reward for whoever sleeps BO this week."[7]



---

[7] BO is a nickname for R.B. and "sleeps" is slang for kill.

<u>VICTIM'S 5 and 6</u>

17.     K.D. owned a residence located at 11072 Pentland Downs Street, Las Vegas, Nevada that she made available for rent. K.D. contacted M.B., a realtor in Las Vegas, to facilitate a showing of that residence to someone who identified themselves as "Dani." In February 2024, M.B. met "Dani" and his personal bodyguard at the guard gate for the community. "Dani" provided photo identification for "IDRISS QIBAA." K.D. rented the property to QIBAA and QIBAA paid rent to K.D. through a wire transfer from a Chase Bank account under the name "UNLOCKED4LIFE LLC" with registered address 1887 Whitney Mesa Drive, Unit 1115, Henderson, Nevada in the amount of $9,750 monthly.

18.     In May 2024, QIBAA sent text messages to K.D. and M.B. to complain about his treatment by the community security guards. QIBAA had not picked up transponders needed to access community's gates.  QIBAA was therefore required to enter through a guard entrance and show identification. QIBAA did not agree with the process and sent racial slurs to K.D. and M.B. The community HOA received constant complaints due to QIBAA and fined K.D. $5,000.

19.     K.D. received a text message from cellular number 424-538-6917 which included K.D.'s personal identifying information such as name, Social Security account number, address, phone number and email address. A message stating, "standby for gladstones" was received from the same telephone number. K.D. also owned a business in California called "Gladstone Clinic." The business received a large amount of spam emails and phone calls that shut down the company's ability to operate.

20.     M.B. was a realtor for approximately 20 years. Her business social media accounts were hacked, and the user posted sexual posts that negatively affected the ongoing business before the account was shut down. QIBAA was scheduled to vacate the

residence owned by K.D. in July 2024. After the proposed move out date of July 18, 2024, QIBAA stated the air conditioning was not functioning and sent threatening communications to K.D. and M.B. On July 19, 2024, M.B. received a security warning on her Apple computer. Apple support advised M.B. the prompt was fake and likely an attempt to hack the computer.



VICTIM'S 7 and 8

21. On July 1, 2024, C.H. and M.P. contacted the Beverly Hills Police Department to report they had been receiving threatening communications from IDRISS QIBAA, "Unlocked For Life," since October 2023. C.H. hired a private investigator to confirm the identity of QIBAA. QIBAA discovered M.P. was related to a high-ranking American politician and took M.P.'s Instagram page down. QIBBA then contacted M.P. and demanded money to reinstate her account.

22. C.H. and M.P. did not pay QIBAA any money and started to receive communications which threatened to hurt them and their families if they didn't pay. In

January 2024, C.H. paid QIBAA $20,000 in Bitcoin because C.H. was in fear for his family's safety.

23. On June 29, 2024, QIBAA showed up at the residence of M.P. and C.H. in Beverly Hills, California. Security camera footage showed QIBAA grabbed a rock from the driveway and smashed the windshield of a white 2022 Bentley and white 2023 Mercedes-Benz parked in the driveway of the residence.

24. M.P. and C.H. reported receiving multiple messages from multiple banks advising them that an unknown person has attempted to open accounts/credit cards under their names.

25. The Telegram account "UNLOCKED FOR LIFE" posted photographs of the residence of M.P. and C.H. as well as personal identifying information to include names, Social Security account numbers, addresses, email address, and phone numbers.



## COUNT ONE

26. T.C., a well-known dentist who owns a practice in Beverly Hills, California treated QIBAA October 2023. The treatments required multiple visits and, on each visit,

QIBAA attempted to start a business relationship with T.C.  T.C. repeatedly told QIBAA that T.C. was not interested and on several occasions asked QIBAA to stop asking. T.C. stated this upset QIBAA.

27.     On July 14, 2024, T.C. began to receive a large number of text messages from QIBAA. T.C. received approximately 700 messages that stated QIBAA was upset, and that QIBAA was going to kill T.C. for disrespecting QIBAA.

28.     On July 19, 2024, T.C. received messages from QIBAA which stated, "you're dead dog fucking dead," "I will come and shoot you myself," "I'm going to bury you for this shit," "D., L., J., T., Children-Main Targets" which referenced T.C.'s children.





COUNT TWO

29.    On July 24, 2024, QIBAA sent more than 70 text messages to K.D and M.B. (See paragraphs 17 – 20 above).  As was the case with the messages sent to T.C. related to Count One, QIBAA sent the messages from Nevada and at least one recipient of the messages was in California.

30.    The texts, as shown below, threaten injury and death to the recipients and their families.

14











31.     Through training and experience your complainant knows criminals are known to use numerous aliases and alternative means of communication to conceal their identity. QIBAA is known by several victims to go by "Dani." Online, QIBAA is known as aliases along the lines of "Unlocked" or "Unlocked4life" and other derivatives. Through his own admission on the podcast "No Jumper," QIBAA goes by the alias "Unlocked" which relates to his online website unlocked4life.com and numerous social media accounts.

32.     Based on the above facts and circumstances, as well as my training and experience, I submit that there is probable cause that Idriss QIBAA, defendant herein, has violated Title 18, United States Code, Section 875(c), Interstate Communications

IAN WENDELBOTH
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on July 25, 2024.

HONORABLE BRENDA N. WEKSLER
UNITED STATES MAGISTRATE JUDGE

DATED: July 25, 2024

18

# EXHIBIT C



4/24/2024 1:54:32 PM

# EXHIBIT D



3150 Porter Drive
Palo Alto, CA 94304-1212

T +1.650.838.4300
F +1.650.838.4350
PerkinsCoie.com

Gabriella Gallego
GGallego@perkinscoie.com
D.  +1.650.838.4815
F.  +1.650.838.4350

February 9, 2024

**VIA EMAIL**

Idriss Qibaa
AKA Dani G

3413 125ᵗʰ Pl Se
Everett, WA 98208
idrisaqibaa@hotmail.com
sammyzenbiz@gmail.com
iqibaa@gmail.com

**Re:    Cease and Desist Abuse of Meta - IDRISS QIBAA**

Dear Mr. Qibaa:

We represent Meta Platforms, Inc. ("Meta," previously known as Facebook, Inc.) based in Menlo Park, California, U.S.A.  Meta operates, among other products, Facebook and Instagram. Meta has gathered evidence that you have been offering services that interfere with the intended operation of Instagram. Specifically, you offer to ban, unban, or arrange verification for Instagram accounts for a fee. You also offer fake engagement services in the form of fake likes and followers. These activities violate Meta's Terms of Service and Instagram's Terms of Use.

**Meta demands that you stop all actions in connection with this abuse.**

Meta takes the protection of the user experience very seriously, and it is committed to keeping its products safe for users to interact and share information.  It has developed terms and policies to protect the user experience and facilitate these goals.

Meta's Terms of Service and Instagram's Terms of Use prohibit, among other things:

- Interfering with and impairing the intended operation of Facebook and Instagram by, including but not limited to, misusing any reporting, dispute, or appeals channel, such as by making fraudulent or groundless reports or appeals;

IDRISS QIBAA
February 9, 2024
Page 2

- Doing anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose;

- Accessing or collecting users' content or information using automated means without Meta's prior permission;

- Buying, selling, or exchanging likes or followers; and

- Facilitating or encouraging others to violate Meta's Terms of Service or Instagram's Terms of Use.

*See* Instagram Terms of Use, http://instagram.com/about/legal/terms/; Meta Terms of Service, https://www.facebook.com/terms.php.

Because you have breached Meta's Terms of Service and Instagram's Terms of Use, Meta has taken technical steps to deactivate your Facebook and Instagram accounts, and hereby revokes your limited licenses to access Facebook and Instagram. **This means that you, your agents, employees, affiliates, or anyone acting on your behalf ("You" or "Your") may not access the Facebook or Instagram websites, mobile applications, Platforms, services, or networks for any reason whatsoever.** Meta will treat any further activity by You on its websites, mobile applications, Platforms, services or networks as intentional and unauthorized access to its protected computer networks.

**Please respond to me WITHIN 48 hours confirming that You:**

- Have stopped and will not in the future access the Facebook and Instagram websites and/or use Facebook's and Instagram's services for any reason whatsoever;

- Have preserved and will continue to preserve in the future all information related to the activities described herein;

- Have stopped and will not in the future offer, transfer, market, sell or offer to sell any services related to Facebook and Instagram;

- Will account for and disgorge any and all revenue earned from Your unauthorized activities related to Facebook and Instagram; and

- Will enter into a written agreement memorializing Your commitment to compliance with the demands in this letter.

**Along with Your response, You must provide the following information:**

IDRISS QIBAA
February 9, 2024
Page 3

- A complete list of any and all Facebook and Instagram accounts You have created, developed, maintained, or controlled;

- A list of all other persons involved in your activities, and their contact information; and

- An accounting of all compensation or revenue You received in connection with the activities described herein, including the accounts for which you were engaged to provide services.

If You ignore this letter and continue Your current improper conduct, Meta will take whatever measures it believes are necessary to enforce its rights, maintain the quality of its websites, and protect users' information and privacy.

This letter is not intended by us, and should not be construed by You, as a waiver or relinquishment of any of Meta's rights or remedies in this matter. Meta specifically reserves all such rights and remedies whether at law or in equity, under applicable domestic and foreign laws.

Very truly yours,

Gabriella Gallego