Bonnie MacNaughton (CA State Bar No. 107402)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, 33rd Floor
Seattle, Washington 98104-1610
Telephone:    (206) 622-3150
Facsimile:    (206) 757-7700
Email: bonniemacnaughton@dwt.com

Attorney for Meta Platforms, Inc.

# IN THE UNITED STATES DISTRICT COURT

# THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| META PLATFORMS, INC., a Delaware Corporation,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>IDRISS QIBAA, and UNLOCKED4LIFE, LLC,<br><br>　　　　　Defendants. | Case No. 3:25-cv-01678-TSH<br><br>**PLAINTIFF META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANTS IDRISS QIBAA AND UNLOCKED4LIFE, LLC**<br><br>Date:    Thursday, August 7, 2025<br>Time:   10:00 a.m.<br>Ctrm:   E, 15th Floor<br>Judge:  Thomas S. Hixson<br><br>Complaint filed: February 18, 2025 |

*DAVIS WRIGHT TREMAINE LLP*

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

  **PLEASE TAKE NOTICE** that, on Thursday, August 7, 2025, at 10:00 a.m., or as soon thereafter as this matter may be heard before Magistrate Judge Thomas S. Hixson in Courtroom E of the above-entitled court located at 450 Golden Gate Avenue, 15th Floor, San Francisco, California, Plaintiff Meta Platforms, Inc. will, and hereby does, move this Court for entry of a default judgment against Defendants Idriss Qibaa and Unlocked4Life, LLC.

  This Motion is made pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure on the grounds that the Clerk has entered default judgment against Defendants based on their failure to respond to the Complaint; the Court has jurisdiction over the claims and parties; all of the factors set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986), favor granting default judgment; Defendants' actions have damaged Plaintiff; Plaintiff is entitled to attorneys' fees and costs; and a permanent injunction is necessary to prevent the irreparable harm Defendants' scheme has caused (which, by virtue of the default, now must be deemed admitted by Defendants).

  This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declarations of Meghan Andre and Bonnie MacNaughton, all pleadings and papers on file, and upon such oral argument as may be made at the hearing on this Motion.

DATED: June 30, 2025

            Respectfully submitted,

            DAVIS WRIGHT TREMAINE LLP

            By: *s/ Bonnie MacNaughton*
               Bonnie MacNaughton

            Attorney for Meta Platforms, Inc.

DAVIS WRIGHT TREMAINE LLP

1

# TABLE OF CONTENTS

2
**Page**

3  TABLE OF CONTENTS ..................................................................................................... i

4  TABLE OF AUTHORITIES ............................................................................................ iii

5  MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

6      I.     Introduction ............................................................................................ 1

7      II.     Background ............................................................................................. 1

8          A.    Meta Owns and Operates Instagram and Facebook. .................................. 2

9          B.    Instagram Users Must Agree to—and Meta Enforces—Instagram's Terms

10             and Policies. ......................................................................................... 2

11         C.    Defendants Agreed to the Terms. ............................................................. 3

12         D.    Defendants Offered for Sale and Sold Instagram Account Disablement

            Services in Violation of the Terms. ........................................................... 3

13         E.    Defendants Offered for Sale Other Unauthorized Instagram Services in

14             Violation of the Terms. .......................................................................... 5

15         F.    Defendants Continued Their Illicit Acts After Meta's Cease-and-Desist

            Letter. ................................................................................................. 7

16         G.    Meta Filed Suit, Defendants Failed to Respond, and the Court Entered

17             Default. ................................................................................................ 8

18         H.    Defendant Qibaa Has Pleaded Guilty to Federal Criminal Charges

            Relating to Misconduct Using Instagram. .................................................. 8

19     III.    Legal Standard ...................................................................................... 9

20     IV.   Discussion ........................................................................................... 9

21         A.    Jurisdiction and Service of Process ........................................................... 9

22            1.    Subject Matter Jurisdiction ........................................................... 10

23            2.    Personal Jurisdiction ................................................................... 10

24                a.    Defendants Consented to Personal Jurisdiction in This

25                   Court. ....................................................................................... 10

26                b.    This Court Has Specific Personal Jurisdiction Over

                  Defendants. .............................................................................. 11

27                   i.    Defendants Purposefully Availed Themselves of

                     and Directed Activities at California. ................... 13

28

DAVIS WRIGHT TREMAINE LLP

ii.     Meta's Claims Arise From Defendants' Forum-Related Activities. ................................... 16

iii.    Defendants Have Not and Cannot Show Unreasonableness. ................................. 17

c.    Defendants Have Been Properly Served. .......................... 17

B.    *Eitel* Factors ............................................................................. 18

1.    Meta Will Be Prejudiced Absent Entry of Default Judgment. ....... 18

2.    Meta's Claims Are Meritorious and Well-Founded. .................... 18

a.    Meta's Breach of Contract Claim is Meritorious and Well-Founded. ........................................................... 18

b.    Meta's Section 502 Claim is Meritorious and Well-Founded. ........................................................... 20

3.    The Amount of Money at Stake Supports a Default Judgment..... 20

4.    There Is No Dispute of Any Material Facts. ............................... 21

5.    There Is No Evidence of Excusable Neglect in the Record. ......... 21

6.    There Is No Likelihood of a Decision on the Merits. ................... 21

C.    Relief Sought ............................................................................... 22

1.    Attorneys' Fees and Costs ...................................................... 22

2.    Injunctive Relief .................................................................... 22

V.    Conclusion ............................................................................................. 24

DAVIS WRIGHT TREMAINE LLP

ii

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3
**Cases**

4
*Aldabe v. Aldabe*,
5
    616 F.2d 1089 (9th Cir. 1980) ............................................................................................. 9

6
*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017) ........................................................................................... 12
7

*Baskin-Robbins Franchising LLC v. Pena*,
8
    2020 WL 2616576 (N.D. Cal. 2020) ........................................................................... *passim*

9
*Baton v. Ledger SAS*,
    740 F. Supp. 3d 847 (N.D. Cal. 2024) ............................................................................. 13
10

11
*Bd. of Trs. of the Sheet Metal Workers Health Care Plan of N. Cal. v.*
    *Superhall Mech., Inc.*,
12
    2011 WL 2600898 (N.D. Cal. 2011) ............................................................................... 20

13
*Biome v. Halverson*,
    2019 WL 2183367 (N.D. Cal. 2019) ............................................................................... 12
14

15
*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ........................................................................................... 13, 14, 17

16
*Butler v. Adoption*,
17
    2004 WL 7338759 (N.D. Cal. 2004) ............................................................................... 14

18
*Craigslist, Inc. v. Naturemarket, Inc.*,
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) ..................................................................... 16, 18
19

20
*Craigslist, Inc. v. Realworks Grp., LLC*,
    2009 WL 10692489 (N.D. Cal. 2009) .............................................................................. 22

21
*Cripps v. Life Ins. Co. of N. Am.*,
22
    980 F.2d 1261 (9th Cir. 1992) ............................................................................................ 9

23
*Danning v. Lavine*,
    572 F.2d 1386 (9th Cir. 1978) ............................................................................................ 9
24

25
*DIRECTV, Inc. v. Hoa Huynh*,
    503 F.3d 847 (9th Cir. 2007) .............................................................................................. 9

26
*Dole Food Co. v. Watts*,
27
    303 F.3d 1104 (9th Cir. 2002) .......................................................................................... 16

28
*eBay Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006) ........................................................................................................ 22

NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANTS
Case No. 3:25-cv-01678-TSH

DAVIS WRIGHT TREMAINE LLP

*Eitel v. McCool*,
    782 F.2d 1470 (9th Cir. 1986)...................................................................*passim*

*Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co., Ltd.*,
    2021 WL 5707741 (N.D. Cal. 2021),
    *report and recommendation adopted*,
    2021 WL 5707740 (N.D. Cal. 2021).............................................................18, 19

*Facebook, Inc. v. Holper*,
    2022 WL 17167958 (N.D. Cal. 2022)...........................................................10, 15

*Facebook, Inc. v. Power Ventures, Inc.*,
    252 F. Supp. 3d 767 (N.D. Cal. 2017) ...............................................................23

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016) ..........................................................................20

*Facebook, Inc. v. Rankwave Co., Ltd.*,
    2019 WL 8895237 (N.D. Cal. 2019)............................................................14, 16

*Facebook, Inc. v. Sluchevsky*,
    2020 WL 5823277 (N.D. Cal. 2020)............................................................*passim*

*Facebook, Inc. v. Solonchenko*,
    2022 WL 18491616 (N.D. Cal. 2022),
    *report and recommendation adopted*,
    2023 WL 420677 (N.D. Cal. 2023)..............................................................10, 11

*Fair Hous. of Marin v. Combs*,
    285 F.3d 899 (9th Cir. 2002)...............................................................................9

*Geddes v. United Fin. Grp.*,
    559 F.2d 557 (9th Cir. 1977)..........................................................................2, 21

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
    972 F.3d 1101 (9th Cir. 2020) ...........................................................................12

*Google, Inc. v. Eolas Techs. Inc.*,
    2014 WL 2916621 (N.D. Cal. 2014)............................................................13, 14

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
    72 F.4th 1085 (9th Cir. 2023)........................................................................12, 15

*In re Tuli*,
    172 F.3d 707 (9th Cir. 1999)...............................................................................9

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
    715 F.3d 716 (9th Cir. 2013).........................................................................12, 16

DAVIS WRIGHT TREMAINE LLP

iv

DAVIS WRIGHT TREMAINE LLP

*Int'l Shoe Co. v. State of Wash., Office of*
    *Unemployment Comp. & Placement*,
    326 U.S. 310 (1945) ................................................................................ 12

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) .................................................................................... 11

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
    858 F.2d 509 (9th Cir. 1988)................................................................... 11

*McCarthy v. United States*,
    850 F.2d 558 (9th Cir. 1988)................................................................... 10

*Meta Platforms, Inc. v. Arowokoko*,
    2023 WL 3035454 (N.D. Cal. 2023),
    *report and recommendation adopted*,
    2023 WL 4013626 (N.D. Cal. 2023)........................................................ 19

*Meta Platforms, Inc. v. Ates*,
    2023 WL 4035611 (N.D. Cal. 2023),
    *report and recommendation adopted*,
    2023 WL 4995717 (N.D. Cal. 2023).................................................. 20, 23

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
    605 F. Supp. 3d 1218 (N.D. Cal. 2022) .................................................. 19

*Meta Platforms, Inc. v. Nguyen*,
    2023 WL 8686924 (N.D. Cal. 2023)............................................ 10, 11, 22, 23

*Naffe v. Frey*,
    789 F.3d 1030 (9th Cir. 2015)................................................................. 10

*Naked Biome v. Halverson*,
    2019 WL 2183378 (N.D. Cal. 2019)........................................................ 12

*Old Republic Home Prot. Co. v. CHW Grp. Inc.*,
    2010 WL 11703270 (N.D. Cal. 2010),
    *report and recommendation adopted*,
    2011 WL 13373813 (N.D. Cal. 2011)...................................................... 12

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*,
    2020 WL 1812257 (N.D. Cal. 2020),
    *aff'd*, 20 F.4th 466 (9th Cir. 2021) .......................................................... 23

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998)................................................................. 12

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015).......................................................... 12, 13

DAVIS WRIGHT TREMAINE LLP

*Rodriguez v. Google LLC*,
  2025 WL 50425 (N.D. Cal. 2025) ...................................................................... 20

*Roth v. Garcia Marquez*,
  942 F.2d 617 (9th Cir. 1991) ........................................................................... 15

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2003) ..................................................................... 12, 13

*Shanghai Automation Instrument Co. v. Kuei*,
  194 F. Supp. 2d 995 (N.D. Cal. 2001) ................................................................ 9

*Speirs v. BlueFire Ethanol Fuels, Inc.*,
  243 Cal. App. 4th 969 (2015) .......................................................................... 19

*Stackla, Inc. v. Facebook, Inc.*,
  2019 WL 4738288 (N.D. Cal. 2019) ................................................................. 24

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
  240 F.3d 832 (9th Cir. 2001) ........................................................................... 23

*Sunbelt Rentals, Inc. v. Victor*,
  43 F. Supp. 3d 1026 (N.D. Cal. 2014) .............................................................. 20

*Sustainable Ranching Partners, Inc. v. Bering Pac. Ranches Ltd.*,
  2017 WL 4805576 (N.D. Cal. 2017) ................................................................. 15

*United States v. Idriss Qibaa*,
  Case 2:24-cr-00175-RFB-MDC (D. Nev. Aug. 6, 2024) ................................. 8, 24

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
  472 F. Supp. 3d 649 (N.D. Cal. 2020),
  *aff'd on other grounds*, 17 F.4th 930 (9th Cir. 2021) ...................................... 11

*Will Co. v. Lee*,
  47 F.4th 917 (9th Cir. 2022) ............................................................................ 15

*Yelp Inc. v. Catron*,
  70 F. Supp. 3d 1082 (N.D. Cal. 2014) .............................................................. 17

**Statutes**

18 U.S.C. § 875 ......................................................................................................... 8

28 U.S.C. § 1332 ..................................................................................................... 10

California Penal Code § 502 ............................................................ 1, 20, 22, 23

**Rules**

Federal Rules of Civil Procedure
 Rule 4 ................................................................................................................... 17
 Rule 54 ............................................................................................................... 9, 22
 Rule 55 ..................................................................................................................... 9

**Constitutional Provisions**

United States Constitution, Due Process Clause ............................................................ 12

DAVIS WRIGHT TREMAINE LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Since no later than March 3, 2023, and continuing until at least August 14, 2024, Defendants Idriss Qibaa ("Qibaa") and Unlocked4Life, LLC ("Unlocked," and with Qibaa, "Defendants") sold unauthorized Instagram services including, among other things: (a) the ability to disable user accounts; (b) user account reinstatement services intended to circumvent enforcement actions taken by Plaintiff Meta Platforms, Inc. ("Meta") in response to users who violated the Instagram Terms of Use ("Terms") and other rules that govern access to and use of Instagram, including Instagram's Community Standards (collectively, "Instagram Terms and Policies"); and (c) fake engagement services intended to artificially inflate followers on Instagram user accounts.  Dkt. 1 ("Compl.") ¶ 1.

On February 9, 2024, in an effort to stop Defendants' unlawful conduct, Meta sent a cease-and-desist letter to Defendants, revoked their licenses to access Facebook and Instagram, and disabled their accounts.  Compl. ¶ 2.  Subsequently, Defendants created new Instagram accounts, which Defendants used to further promote their unauthorized services.  *Id.* Defendants' conduct was unauthorized and violates the Instagram Terms and Policies, as well as California Penal Code § 502.  *Id.* ¶ 3.

Meta filed this action on February 18, 2025.  Dkt. 1.  Defendants failed to respond to Meta's Complaint.  On March 28, 2025, the clerk entered default against Defendants.  Dkt. 13. Given Defendants' failure to answer the Complaint or otherwise respond, Meta now seeks default judgment.  As described below, this Court has jurisdiction to enter a default; all of the *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986), factors favor granting default judgment; and Meta is entitled to attorneys' fees and costs and a permanent injunction, the latter of which is necessary to stop future violations by Defendants.  The Court should enter default judgment.

### II.    BACKGROUND

After an entry of default, "well-pleaded factual allegations in the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party."  *Baskin-*

DAVIS WRIGHT TREMAINE LLP

*Robbins Franchising LLC v. Pena*, 2020 WL 2616576, at *1 (N.D. Cal. 2020) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).  Accordingly, the Court can and should "accept[] the following allegations as true."  *Id.*

### A.    Meta Owns and Operates Instagram and Facebook.

Meta owns and operates Instagram, which is a free photo and video sharing service, website, and mobile application.  Compl. ¶ 14.  Instagram users can upload photos and videos to Instagram and share them with others.  *Id.*  They can also view, comment, and like posts shared by others on Instagram.  *Id.*

Meta also owns and operates Facebook, which is an online service that is available on computers and mobile devices.  Compl. ¶ 15.  Facebook helps give people the power to build community; share life's moments; discuss what is happening; and discover and connect to interests through Feed, Reels, Stories, Groups, Marketplace, and more.  *Id.*

### B.    Instagram Users Must Agree to—and Meta Enforces—Instagram's Terms and Policies.

Everyone who creates an account or uses Instagram must agree to Instagram's Terms and Policies and therefore has notice of the Terms.[1]  Compl. ¶ 17.  The Terms prohibit users from:

- doing "anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose," *id.* ¶ 18;

- accessing or attempting to access accounts in unauthorized ways, *id.* ¶ 19; and

- doing "anything to interfere with or impair the intended operation of [Instagram]," including "misusing any reporting, dispute, or appeals channel, such as by making fraudulent or groundless reports or appeals," *id.* ¶ 20.

The Terms state that a person cannot use Instagram if Meta has "previously disabled your account for violation of law or any of our policies."  *Id.* ¶ 21.

Meta has a variety of measures and tools in place to enforce the Instagram Terms and Policies, including content removal and account access restriction and termination. Compl. ¶¶ 24–26. If Meta disables or restricts an Instagram account and the user believes the

---

[1] The Terms are located on the Instagram website at http://instagram.com/about/legal/terms/.

NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANTS
Case No. 3:25-cv-01678-TSH

DAVIS WRIGHT TREMAINE LLP

enforcement was by mistake, the user may appeal Meta's enforcement.  *Id.* ¶ 27.  Only Meta is authorized to reinstate accounts or account access or lift account restrictions after an enforcement.  *Id.*

### C.    Defendants Agreed to the Terms.

Between May 3, 2012, and July 23, 2024, Defendants created and controlled at least 21 Instagram accounts.  Compl. ¶ 23.  At all relevant times, Defendants had notice of and were bound by the Terms.  *Id.* ¶ 22.

### D.    Defendants Offered for Sale and Sold Instagram Account Disablement Services in Violation of the Terms.

Defendants violated the Terms by offering for sale and selling Instagram account disablement services, as well as submitting deceptive and misleading requests through Meta's reporting channel to do so.  Compl. ¶¶ 28–33.

Specifically, beginning no later than March 3, 2023, and continuing until at least August 14, 2024, Defendants violated the Terms by offering for sale and selling services to disable Instagram user accounts.  Compl. ¶ 28.  Defendants also used their Instagram accounts to create multiple posts promoting their ability to disable Instagram user accounts.  *Id.* ¶ 29.  For example:

**Figure A: Defendants' March 3, 2023, Instagram Post on their @unlockedforlife Instagram Account (Compl. Fig. 2.)**



NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANTS
Case No. 3:25-cv-01678-TSH

DAVIS WRIGHT TREMAINE LLP

**Figure B: Defendants' January 7, 2024, Instagram Post on their @unlockmyinsta Instagram Account (Compl. Fig. 3)**



On or about November 14, 2023, Defendants submitted or caused to be submitted a deceptive and misleading request through Meta's external reporting channel falsely claiming that an Instagram Account (Account A) was violating Instagram's Terms and Policies.  Compl. ¶ 30. The false and misleading report caused Account A to be disabled on November 14, 2023.  *Id.* Meta reinstated Account A on November 15, 2023.  *Id.*  Defendants subsequently created or caused to be created multiple Instagram posts claiming credit for Account A's disablement, including Figure B above.  *Id.* ¶ 30 & Fig. 3.

On or about April 25, 2024, Defendants submitted or caused to be submitted a deceptive and misleading request through Meta's external reporting channel, falsely claiming that an Instagram account (Account B) was violating Instagram's Terms and Policies.  Compl. ¶ 33. The false and misleading report caused Account B to be disabled on April 25, 2024.  *Id.*  Meta reinstated Account B later that same day.  *Id.*  On or about April 27 and June 3, Defendants posted to their Telegram channel, "Unlocked For Life," taking credit for disabling Account B and boasting that they "banned [Account B's] IG."  *Id.*

NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANTS
Case No. 3:25-cv-01678-TSH

Defendants actively promoted their account disablement services. *See* Compl. ¶¶ 31–32. On January 18, 2024, Defendant Qibaa appeared on the "No Jumper" podcast in an episode titled "UNLOCKED Exposes The Instagram Ban/Unban Game & Making Millions off D*** Dealers." *Id.* ¶ 31 & Fig. 4.  On the podcast, Defendant Qibaa promoted Unlocked and stated he profits by extorting certain Instagram users by disabling their user accounts and charging those users to reinstate their accounts. *Id.* ¶ 31.  Defendant Qibaa claimed that over 200 people pay him monthly to maintain access to their user accounts and that he makes more than $600,000 a month offering these services. *Id.*  As of June 30, 2025, the podcast is available on YouTube at https://www.youtube.com/watch?v=mr71K-Hy-xU and was formerly available on Defendants' website before that website was taken down. *Id.*  Defendants also promoted their account disablement services on Unlocked's website and their Telegram channel. *Id.* ¶ 32.  On April 24, 2024, in a post to their Telegram channel, Defendants directed customers seeking Instagram banning services to "[s]end a screenshot of the target. *Id.*  We need to see the page to quote smoking it." *Id.* ¶ 32 & Ex. C.

**E.    Defendants Offered for Sale Other Unauthorized Instagram Services in Violation of the Terms.**

In addition to selling the ability to disable Instagram user accounts, Defendants offered a menu of other services that violated Instagram's Terms and Policies.  Compl. ¶ 34.  For example, Defendants sold account reinstatement services that re-enabled disabled or otherwise restricted user accounts and sold fake Instagram engagement. *Id.*  Defendants promoted the sale of these services on their Instagram accounts, Unlocked's website (unlocked4life.com), and on their Telegram account. *Id.*

On or about January 9, 2024, Defendants created or caused to be created Instagram posts on an Instagram account with the username "unlockmyinsta" that promoted Unlocked's services, including Instagram account bans, account reinstatements, and fake engagement, among other services.  Compl. ¶ 35 & Fig. 5.  Defendants also claimed to provide similar services directed to users of other platforms including X (formerly known as Twitter), YouTube, TikTok, and Telegram. *Id.*  And they offered their "UNLOCKED PROTECTION," "a "whitelist[ing]"

NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANTS
Case No. 3:25-cv-01678-TSH

DAVIS WRIGHT TREMAINE LLP

service for Instagram, Snapchat, and Telegram users for $750 per year.  *Id.* ¶ 36.  See Figure C below.

**Figure C: Defendants' January 9, 2024, Instagram Posts on Defendants' @unlockmyinsta Instagram Account (Compl. Figs. 5–6)**




Through Unlocked's website, Defendants offered to provide services to reinstate disabled or otherwise restricted user accounts.  Compl. ¶¶ 37–38.  As of at least January 2024, Defendants' website directed customers to "DM TO GET BACK YOUR . . . GRAMS," which meant customers should direct message Defendants to re-enable a disabled Instagram account."  *Id.* ¶ 37 & Fig. 7.  Defendants also, through Unlocked's website, offered to artificially inflate the number of followers on Instagram accounts: 10,000 followers for $200, 25,000 followers for $350, 50,000 followers for $600, and 100,000 followers for $900.  *Id.* ¶ 38 & Fig. 8.  And Defendants offered their customers the opportunity to join their "ELITE SALES GROUP" (called "TEAM UNLOCKED") where members would be provided access to sell Unlocked's unauthorized Instagram services, among other things.  *Id.* ¶ 39.  To access TEAM UNLOCKED,

DAVIS WRIGHT TREMAINE LLP

Defendants asked customers to pay them a one-time fee of $7,500. *Id.* Defendants would then provide fake engagement including 25,000 followers and "24/7 ACCESS" to Defendant Qibaa, among other things. *Id.*

**F.      Defendants Continued Their Illicit Acts After Meta's Cease-and-Desist Letter.**

On February 9, 2024, Meta sent a cease-and-desist letter to Defendants for violating Instagram's Terms. Compl. ¶ 40 & Ex. D. At that time, Meta also disabled all known Facebook and Instagram accounts associated with Defendants. *Id.* ¶ 40. In the cease-and-desist letter, Meta provided the URL where the Terms can be viewed and demanded that Defendants stop violating the Terms, including by offering unauthorized Instagram account services to disable Instagram user accounts; reinstating disabled or otherwise restricted user accounts; and artificially inflating followers on Instagram. *Id.* ¶ 41. The letter also informed Defendants that Meta had revoked Defendants' licenses to access Facebook and Instagram, and that Defendants were no longer authorized to access Facebook or Instagram "for any reason whatsoever." *Id.* ¶ 41 & Ex. D. Yet Defendants continued to access Instagram and Facebook after that revocation in violation of the Terms. *Id.* ¶¶ 19, 21, 42–45.

For example, beginning on or about April 1, 2024, Defendants took control of an Instagram user account with the username "nabdjbbzbsjsjsjsb." Compl. ¶ 42. Defendants changed the username of the account to "idrissocean." *Id.* Meta disabled Defendants' "idrissocean" user account on or about May 8, 2024. *Id.* On or about April 25, 2024, Defendants also submitted or caused to be submitted a deceptive and misleading request through Meta's external reporting channel in violation of Instagram's Terms, which resulted in Meta directly disabling Account B, discussed above. *Id.* ¶ 43. On July 17, 2024, Defendants created an Instagram user account with the username "unlockedreborn." *Id.* ¶ 44. On July 21, 2024, Defendants created an Instagram post through that account promoting and directing users to a Telegram channel where Defendants sold unauthorized Instagram account services. *Id.* On or about July 22, 2024, Meta disabled the "unlockedreborn" user account. *Id.* And on July 19, 2024, Defendants created an Instagram user account with the username "paid4lifes." *Id.* ¶ 45. On or about July 23, 2024, Meta disabled the "paid4lifes" account. *Id.*

7

### G. Meta Filed Suit, Defendants Failed to Respond, and the Court Entered Default.

On February 18, 2025, Meta filed this action against Defendants. Dkt 1. On February 25, 2025, Meta served both Qibaa and Unlocked with the Complaint, Civil Cover Sheet, Summons, and the Court's Order Setting Initial Case Management Conference and ADR Deadlines. Dkts. 1–4. Meta served both Qibaa and Unlocked via personal service through the Nye County Sheriff's Department at the Nevada Southern Detention Center. Dkts. 8–9; *see also* Dkt. 11-1 (MacNaughton Decl.), Ex. A. Qibaa accepted service as an individual and as a managing member of Unlocked. Dkt 11-1 (MacNaughton Decl.), Ex. A. Because Defendants did not respond to the Complaint by their March 18, 2025 deadline, Meta requested entry of default against Defendants on March 25, 2025. Dkt. 11. The Clerk entered default three days later. Dkts. 12–13. Meta served the Clerk's Notice of Entry of Default, Dkt. 12, and Notice re: Default Judgment Procedure, Dkt. 13, on Defendants as ordered by the Court. Declaration of Bonnie MacNaughton In Support of Motion for Default Judgment as to Defendants ("MacNaughton DJ Decl.") ¶ 2. Meta now moves for entry of a default judgment against Defendants.

### H. Defendant Qibaa Has Pleaded Guilty to Federal Criminal Charges Relating to Misconduct Using Instagram.

On August 6, 2024, Qibaa was indicted by a grand jury in the District of Nevada and charged with two counts of violating 18 U.S.C. § 875 for sending messages threatening to injure or kill two victims. Compl., Ex. B; *see generally United States v. Idriss Qibaa,* Case 2:24-cr-00175-RFB-MDC (D. Nev. Aug. 6, 2024) (hereinafter, "*Qibaa*"). The government's complaint includes multiple allegations that Qibaa offered and sold unauthorized Instagram services and harassed Instagram users. On February 21, 2025, Qibaa pleaded guilty to extortion, money laundering, stalking, and interstate communications containing a threat to injure. *Qibaa*, Dkt. 40. Qibaa was sentenced in May 2025 to three years of incarceration followed by three years of supervised release. *Qibaa*, Dkt. 57.

NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANTS
Case No. 3:25-cv-01678-TSH

DAVIS WRIGHT TREMAINE LLP

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case.  "The district court's decision whether to enter default judgment is a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

At the default judgment stage, the factual allegations of the complaint, except those concerning damages, "together with other competent evidence submitted" are deemed admitted by the non-responding parties.  *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1000 (N.D. Cal. 2001); *see also Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true.").  "However, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."  *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (citation and quotation omitted).  Therefore, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); *accord DIRECTV*, 503 F.3d at 854.  Further, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

In determining whether default judgment is appropriate, the Ninth Circuit enumerated the following factors for courts to consider:

> (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

### IV.    DISCUSSION

#### A.    Jurisdiction and Service of Process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case.  *See In re Tuli*, 172

9

DAVIS WRIGHT TREMAINE LLP

F.3d 707, 712 (9th Cir. 1999). "[T]he district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (considering subject matter jurisdiction on a 12(b)(1) motion).

### 1.    Subject Matter Jurisdiction

The Court has diversity jurisdiction under 28 U.S.C. § 1332 because complete diversity exists and the amount in controversy exceeds $75,000. Compl. ¶¶ 4–6, 9; *cf. Naffe v. Frey*, 789 F.3d 1030, 1039 (9th Cir. 2015).

### 2.    Personal Jurisdiction

The Court has personal jurisdiction over Defendants for multiple reasons.

*First*, Defendants consented to the personal jurisdiction of this Court when Defendants agreed to the Terms by creating and controlling multiple Instagram accounts. As courts in this District have held, assent to the Terms, which contain a forum selection clause, constitutes consent to this Court's jurisdiction. *See, e.g.*, *Facebook, Inc. v. Solonchenko*, 2022 WL 18491616, at *3 (N.D. Cal. 2022) (holding consent to personal jurisdiction under Meta's prior, almost-identical forum selection clause), *report and recommendation adopted*, 2023 WL 420677 (N.D. Cal. 2023); *Meta Platforms, Inc. v. Nguyen*, 2023 WL 8686924, at *5 (N.D. Cal. 2023) (same).

*Second*, even if Defendants had not consented to this Court's jurisdiction (and they did), the Court also has personal jurisdiction over Defendants because they purposefully availed themselves of the privilege of doing business in California and purposefully directed their infringing activities to California. *See, e.g.*, *Facebook, Inc. v. Holper*, 2022 WL 17167958, at *5 (N.D. Cal. 2022) (finding personal jurisdiction when defendant "intentionally manipulated Facebook's Instagram platform . . . , predictably causing harm to Facebook in California").

#### a.    Defendants Consented to Personal Jurisdiction in This Court.

Defendants consented to personal jurisdiction in this Court when they agreed to and became bound by the Terms and thereby agreed to the forum selection clause in the terms requiring them to submit to this Court's personal jurisdiction. Compl. ¶ 10. A forum selection

DAVIS WRIGHT TREMAINE LLP

clause is construed as consent by the parties to the personal jurisdiction of the courts of the selected forum. *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 668 (N.D. Cal. 2020), *aff'd on other grounds*, 17 F.4th 930 (9th Cir. 2021). Forum selection clauses are *prima facie* valid and specifically enforceable "unless the party opposing the clause clearly shows 'that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 512 (9th Cir. 1988) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

Here, the Terms contain a forum selection clause requiring consent to this Court's personal jurisdiction:

> For any claim that is not arbitrated or resolved in small claims court, you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. *You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim.*

*See* Declaration of Meghan Andre in Support of Default Judgment Motion ("Andre Decl."), Ex. A § 7.4 (emphasis added). Defendants agreed to the Terms every time they created each of their many Instagram accounts—and therefore agreed to litigate all claims brought by Meta in this Court. Compl. ¶¶ 10, 17, 22–23; *see* Andre Decl. ¶ 3 & Exs. A–E § 7.4; *Solonchenko*, 2022 WL 18491616, at *3 (holding Meta's forum selection clause "unambiguously reflects the defendant's consent to personal jurisdiction"); *Nguyen*, 2023 WL 8686924, at *5 ("Defendants consented to the jurisdiction of this Court by agreeing to Facebook's TOS.").

As courts in this very District have held, a non-appearing defendant's assent to the terms of a forum selection clause is presumed in a default posture where it is well pled, as it is here. *See, e.g.*, *Facebook, Inc. v. Sluchevsky*, 2020 WL 5823277, at *2 n.1 (N.D. Cal. 2020). Accordingly, this Court has jurisdiction.

### b. This Court Has Specific Personal Jurisdiction Over Defendants.

Although Defendants' assent to the forum selection clause is sufficient to confer jurisdiction, specific personal jurisdiction exists based on Defendants' contacts with this forum. "Personal jurisdiction over a nonresident defendant is proper if permitted by a state's long-arm

NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANTS
Case No. 3:25-cv-01678-TSH

statute and if the exercise of that jurisdiction does not violate federal due process."[2]  *Naked Biome v. Halverson*, 2019 WL 2183378, at *3 (N.D. Cal. 2019) (citing *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013)), *report and recommendation adopted sub nom. Biome v. Halverson*, 2019 WL 2183367 (N.D. Cal. 2019).  To satisfy due process, a defendant must have "minimum contacts" with the forum such that the assertion of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

When, "as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts."  *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020) (quotation omitted); *see also Old Republic Home Prot. Co. v. CHW Grp. Inc.*, 2010 WL 11703270, at *3 (N.D. Cal. 2010) (jurisdictional allegations accepted as true after entry of default), *report and recommendation adopted*, 2011 WL 13373813 (N.D. Cal. 2011).

Specific jurisdiction exists wherever: (1) a defendant purposefully directs activities at the forum or its residents, or performs some act by which it purposefully avails itself of the privilege of conducting activities in the forum; (2) the claim arises out of, or relates to, those activities; and (3) the exercise of jurisdiction is reasonable.  *Herbal Brands, Inc. v. Photoplaza, Inc.,* 72 F.4th 1085, 1090 (9th Cir. 2023) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2003)), *cert. denied*, 144 S. Ct. 693, 217 L. Ed. 2d 389 (2024).  "The plaintiff has the burden of proving the first two prongs."  *Id.* (quoting *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015)).  Once the plaintiff does so, the defendant must "'present a compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.* (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068–69 (9th Cir. 2017)).

---

[2] California's long-arm statute authorizes specific personal jurisdiction over a nonresident defendant to the full extent permitted by the Due Process Clause of the United States Constitution. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).

DAVIS WRIGHT TREMAINE LLP

### i. Defendants Purposefully Availed Themselves of and Directed Activities at California.

"Purposeful availment" and "purposeful direction" under the specific jurisdiction test are distinct concepts. *Schwarzenegger*, 374 F.3d at 802–03. A purposeful direction analysis is used in cases alleging tort claims; and a purposeful availment analysis is used in contract disputes. *Id.* This Court has personal jurisdiction over Defendants under either test because Defendants both availed themselves of the privilege of conducting business in California and purposefully directed their activities at California.

*First*, Defendants purposefully availed themselves of the benefits and protections of California. To determine purposeful availment, courts "ask whether a defendant has purposefully availed himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 886 (N.D. Cal. 2024) (brackets and quotation marks omitted) (quoting *Picot*, 780 F.3d at 1212). "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there," *id.* (quoting *Schwarzenegger*, 374 F.3d at 802)— especially one with a choice-of-law provision providing for the application of the forum state's laws. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985). Ultimately, those "who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.'" *Sluchevsky*, 2020 WL 5823277, at *3 (quoting *Burger King*, 471 U.S. at 473).

Here, Defendants entered into the very agreements that are the subject of this lawsuit with a California company. *Schwarzenegger*, 374 F.3d at 802 ("A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there."). And the agreements contained choice-of-law provisions providing for the application of California law. *Compare* Andre Decl., Ex. A § 7.4, *with Google, Inc. v. Eolas Techs. Inc.*, 2014 WL 2916621, at *3 (N.D. Cal. 2014) (defendant's agreement to California choice-of-law provision evidenced that defendant availed itself of benefits and protections of California law).

NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANTS
Case No. 3:25-cv-01678-TSH

DAVIS WRIGHT TREMAINE LLP

From at least May 3, 2012 to July 23, 2024, Defendants created, controlled, and maintained at least 21 Instagram accounts, thereby entering into various contracts with Meta, a California entity.  Compl. ¶¶ 4, 10, 17, 22–23.  Individually, each contract created a continuing relationship and ongoing obligations under California law between the contracting parties.  *See id.*; Andre Decl., Ex. A § 7.4.

"At bottom, the ongoing obligations of both parties—[Meta] to allow Defendants to use its platform and Defendants to comply with [Meta's] policies regarding user data—constitute a continuous course of dealing that suffices to make a prima facie showing of purposeful availment."  *See Sluchevsky*, 2020 WL 5823277, at *3 (alterations and quotation omitted).  That Defendants "consented to California law in the choice of law provision" only further evidences that Defendants "ha[ve] chosen to avail [themselves] of the benefits and protections of California's laws."  *See Eolas Techs. Inc.*, 2014 WL 2916621, at *3; *see also Burger King*, 471 U.S. at 482 (choice-of-law provision "reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there"); *Facebook, Inc. v. Rankwave Co., Ltd.*, 2019 WL 8895237, at *5–6 (N.D. Cal. 2019) (finding specific jurisdiction based, in part, on contacts with California created by defendant's acceptance of forum selection clause and choice-of-law provision in Facebook's Terms despite finding that provision did not bind defendant).  Collectively, "the large number of agreements between [D]efendants and [Meta] supports [Meta's] assertion that [D]efendants have purposefully availed themselves of the benefits and protections of doing business in California."  *Butler v. Adoption*, 2004 WL 7338759, at *7 (N.D. Cal. 2004).  The Terms created a continuing relationship and obligation with a California entity (Meta) under California law that establishes purposeful availment.

Indeed, Defendants took advantage of the benefit of their contracts with Meta by accessing and using over 21 Instagram accounts over more than a decade.  Compl. ¶¶ 22–23.  All the while, in exchange for the promises Defendants breached, Meta continually performed under the contract for years, granting Defendants access to its California-based services.  *Id.* ¶ 49.  The contracts Defendants entered into with Meta anticipated an ongoing relationship with Meta where Meta would continually perform the contract in California to enable Defendants ongoing

14

access to Meta's platform. *See, e.g.*, *Facebook, Inc. v. Holper*, 2022 WL 17167958, at \*5 (N.D. Cal. 2022) ("Facebook is widely known to be headquartered in California.  Holper intentionally manipulated Facebook's Instagram platform . . . , predictably causing harm to Facebook in California, from which Facebook's present claims[, including breach of contract,] arise.  The undersigned is satisfied that the conduct at issue warrants exercising personal jurisdiction over Holper despite his residence outside of the forum."), *report and recommendation adopted as modified*, 2022 WL 17169836 (N.D. Cal. 2022); *Sustainable Ranching Partners, Inc. v. Bering Pac. Ranches Ltd.*, 2017 WL 4805576, at \*5–6 (N.D. Cal. 2017) (holding defendants "purposefully availed themselves of this forum" when the "agreement created continuing obligations between Defendants and residents of the forum," as opposed to parties that "go their separate ways" after a single sale (brackets and quotations omitted)); *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) (holding "enough purposeful availment here to compel a finding of jurisdiction" when "[t]his is not an instance where the contract was a one-shot deal that was merely negotiated and signed by one party" but rather "the contract's subject would have continuing and extensive involvement with the forum").

Accordingly, Defendants purposefully availed themselves of the privileges of conducting activities in California.

**Second**, Defendants purposefully directed their activities at California.  To determine purposeful direction, courts apply the *Calder* effects test, asking "whether the defendant: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Herbal Brands, Inc.,* 72 F.4th at 1090 (quotation marks omitted) (quoting *Will Co. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022)). There is no question Defendants "purposefully directed" their activities at California.

Defendants committed intentional acts when they continuously accessed and used Instagram to promote and execute their unauthorized Instagram account services.  *See* Compl. ¶¶ 28–45.  Defendants directed those acts toward California and caused harm that Defendants knew was likely to be suffered by Meta in California.  *Id.* ¶¶ 10–11.  Defendants provided unauthorized Instagram account disablement services that caused an Instagram account

DAVIS WRIGHT TREMAINE LLP

belonging to at least one user located in California to be disabled.  *Id.* ¶ 11.  Meta had to expend resources to detect and remediate Defendants' activities.  *Id.* ¶¶ 52, 60.  Meta deployed those resources in California where it is headquartered.  *Id.* ¶¶ 4, 52, 60.  Defendants therefore inflicted harm in California.  *Id.*

Meta is based in California.  Compl. ¶ 4; *see Rankwave Co., Ltd.*, 2019 WL 8895237, at *19 (stating that it is a "well-known fact that Facebook [now known as Meta] is headquartered in California").  Thus, by promoting and executing their unauthorized Instagram account services, causing an Instagram account belonging to at least one user located in California to be disabled, and accessing Meta's computers without authorization, Defendants knew their illicit conduct was directed at California and would cause harm in California.  *See Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1053 (N.D. Cal. 2010) (finding that the plaintiff had "sufficiently shown that Defendants purposefully directed their conduct at California," reasoning that "[b]ecause Plaintiff is headquartered in California and maintains its websites in California, Defendants' actions directly targeted California, and defendants knew that Plaintiff would suffer the brunt of its harm in California"); *see also Dole Food Co. v. Watts*, 303 F.3d 1104, 1113–14 (9th Cir. 2002) ("[A] corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business.").

Accordingly, Defendants purposefully directed intentional acts at California and caused harm there.

### ii.   Meta's Claims Arise From Defendants' Forum-Related Activities.

The "arising from" requirement is satisfied here.  Meta would not have been injured "but for" Defendants' forum-related activities.  *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d at 742 (describing "second prong of the specific jurisdiction test as a 'but for' test").  Defendants expressly targeted California by knowingly directing and targeting their conduct at Meta, which has a principal place of business in California.  Compl. ¶ 11.  They also expressly targeted California by providing unauthorized account reinstatement services that caused an Instagram account belonging to at least one user located in California to be disabled. *Id.*

16

DAVIS WRIGHT TREMAINE LLP

Because Defendants targeted Meta and at least one California Instagram user in a manner that caused harm felt in California, the "arising from" factor is satisfied.  *See id.*; *cf. Sluchevsky*, 2020 WL 5823277, at *3 (Facebook "met its burden by showing and adequately alleging that the underlying controversy arises from Defendants' contacts with the forum through" their ongoing contractual dealings with Facebook and use of a Facebook account); *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1093 (N.D. Cal. 2014) ("arising from" element met where "Defendant expressly targeted Yelp, a company located in California, and Yelp suffered injury from [defendant's] schemes in this forum").

### iii.    Defendants Have Not and Cannot Show Unreasonableness.

"Because the first two requirements for exercising specific personal jurisdiction ha[ve] been established," Defendants must present a "'compelling case' that asserting jurisdiction would be unreasonable." *Catron*, 70 F. Supp. 3d at 1093–94.  Defendants, however, "waived [their] opportunity to make this showing by failing to participate in this litigation." *Id.* at 1094.  Nor could Defendants meet their heavy burden.  As stated above, Defendants specifically targeted Meta, a known California company, through their scheme.  Meta also notified Defendants of their violations of the Terms when it sent the cease-and-desist letter.  Compl. ¶¶ 40–41.  Thus, Defendants "had 'fair warning' that [they] might be sued in California." *Catron*, 70 F. Supp. 3d at 1094 (citing *Burger King*, 471 U.S. at 472).

### c.    Defendants Have Been Properly Served.

On February 25, 2025, Meta served both Qibaa and Unlocked with the Complaint, Civil Cover Sheet, Summons, and the Court's Order Setting Initial Case Management Conference and ADR Deadlines.  Dkts. 1–4.  Meta served both Qibaa and Unlocked via personal service through the Nye County Sheriff's Department at the Nevada Southern Detention Center.  Dkts. 8–9; *see also* Dkt 11-1 (MacNaughton Decl.), Ex. A.  Qibaa accepted service as an individual and as a managing member of Unlocked.  Dkt 11-1 (MacNaughton Decl.), Ex. A; *cf.* Fed. R. Civ. P. 4(e)(2)(A) (providing for service on an individual by delivering summons and complaint "to the individual personally"); Fed. R. Civ. P. 4(h)(1)(B) (providing for service on a corporation by delivering summons and complaint to "managing or general agent").  Because Defendants did

NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANTS
Case No. 3:25-cv-01678-TSH

1    not respond to the Complaint by their March 18, 2025 deadline, Meta requested entry of default

2    against Defendants on March 25, 2025.  Dkt. 11.  The Clerk entered default three days later.

3    Dkt. 13.  Consistent with the Clerk's entry of default, Meta served that entry on Defendants via

4    U.S. Mail.  *See* MacNaughton DJ Decl. ¶ 2.  Defendants have been properly served.

5         **B.    *Eitel* Factors**

6         Consideration of the *Eitel* factors weighs heavily in favor of granting default judgment.

7    Taking those factors in turn:

8         **1.    Meta Will Be Prejudiced Absent Entry of Default Judgment.**

9         "The first *Eitel* factor considers whether the plaintiff will suffer prejudice if the court

10   denies default judgment."  *Baskin-Robbins*, 2020 WL 2616576, at *7.  Here, "if default judgment

11   isn't entered, [Meta] will be prejudiced because [it] will be left without a judicial remedy."  *See*

12   *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co., Ltd.,* 2021 WL 5707741, at *5 (N.D. Cal.

13   2021), *report and recommendation adopted*, 2021 WL 5707740 (N.D. Cal. 2021).  Indeed,

14   absent an injunction to preclude Defendants' unauthorized access, use, and abuse of Meta's

15   platform to provide illicit Instagram account disablement, reinstatement, and fake engagement

16   services, Meta will be prejudiced and continue to suffer harm.  Thus, the first factor favors

17   granting default judgment.

18        **2.    Meta's Claims Are Meritorious and Well-Founded.**

19        "The second and third *Eitel* factors require the plaintiff 'to plead facts sufficient to

20   establish and succeed upon its claims.'"  *Baskin-Robbins*, 2020 WL 2616576, at *7 (quoting

21   *Naturemarket, Inc.*, 694 F. Supp. 2d at 1055).  The "well-pleaded factual allegations in the

22   complaint, except those concerning damages, are deemed to have been admitted by the non-

23   responding party."  *Id.*  Therefore, the "district court is not required to make detailed findings of

24   fact."  *Id.*  For the reasons set forth below, Meta's claims are meritorious and well-founded.

25        **a.    Meta's Breach of Contract Claim is Meritorious and Well-Founded.**

26        To state a claim for breach of contract, Meta need show only: (1) the existence of a

27   contract; (2) Meta's performance or excuse for non-performance; (3) Defendants' breach; and

28

NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANTS
Case No. 3:25-cv-01678-TSH

DAVIS WRIGHT TREMAINE LLP

(4) resulting damages. *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1257 (N.D. Cal. 2022). Meta has pled all necessary elements.

*First*, valid contracts exist between Meta and Defendants. "Defendants agreed to the . . . Instagram Terms of Service and Use by accessing, creating, and using . . . Instagram accounts." *Meta Platforms, Inc. v. Arowokoko*, 2023 WL 3035454, at *7 (N.D. Cal. 2023) (collecting cases involving Facebook, Yelp, and Craigslist), *report and recommendation adopted*, 2023 WL 4013626 (N.D. Cal. 2023); *see* Compl. ¶¶ 17, 22–23; *cf.* Andre Decl. ¶ 3. The Terms prohibit users from doing anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose. Compl. ¶ 18. The Terms also prohibit accessing or attempting to access accounts in unauthorized ways; doing anything to interfere with or impair the intended operation of Instagram; and misusing any reporting, dispute, or appeals channel. *Id.* ¶¶ 19–20. And the Terms prohibit someone from using Instagram if Meta has previously disabled that person's user account for violating any law or Meta's policies. *Id.* ¶¶ 21, 51.

*Second*, Meta performed its end of the bargain by "allowing Defendants to use . . . Instagram, until Meta became aware that they were in breach of the . . . Instagram Terms." *Arowokoko*, 2023 WL 3035454, at *7; *see* Compl. ¶¶ 23, 28–40.

*Third*, Defendants breached the Terms by offering for sale and selling unauthorized Instagram services including services to disable Instagram user accounts; misusing Meta reporting, dispute, or appeal channels in furtherance of their scheme; and creating multiple new Instagram accounts and continuing to use Instagram accounts after Meta sent the cease-and-desist letter informing Defendants they were no longer authorized to access Instagram. Compl. ¶¶ 28–45, 50–51.

*Finally*, as a result of Defendants' actions, Meta suffered damages. Compl. ¶ 52. Among other things, Meta expended resources to investigate, remediate, and respond to Defendants' breaching conduct. *Id.*; *cf. Arowokoko*, 2023 WL 3035454, at *8 (holding Meta alleged it had incurred damages "in excess of $75,000, including for significant time and expense spent investigating and taking enforcement actions against Defendants" (citing *Speirs v. BlueFire Ethanol Fuels, Inc.*, 243 Cal. App. 4th 969, 989 (2015))); *9 Xiu*, 2021 WL 5707741, at *5 (Meta

19

DAVIS WRIGHT TREMAINE LLP

1  sufficiently pled damages element of contract claim by alleging that it had to "expend time and
2  resources to investigate" and remediate prohibited activities).

3          **b.      Meta's Section 502 Claim is Meritorious and Well-Founded.**

4          Section 502 of the California Penal Code prohibits the unauthorized access and use of
5  any data from a computer, computer system, or computer network.  Cal. Penal Code § 502.
6  "Section 502 is an anti-hacking statute intended to prohibit the unauthorized use of any computer
7  system for improper or illegitimate purpose." *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d
8  1026, 1032 (N.D. Cal. 2014).  The Ninth Circuit has held that continued use of Meta's services
9  after receipt of a cease-and-desist letter violates Section 502.  *Facebook, Inc. v. Power Ventures,*
10  *Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016) ("[W]hen Facebook sent the cease and desist letter,
11  Power, as it conceded, knew that it no longer had permission to access Facebook's computers at
12  all.  Power, therefore, knowingly accessed and without permission took, copied, and made use of
13  Facebook's data."); *cf. Meta Platforms, Inc. v. Ates*, 2023 WL 4035611, at *6 (N.D. Cal. 2023),
14  *report and recommendation adopted*, 2023 WL 4995717 (N.D. Cal. 2023) ("The Ninth Circuit
15  has held that continued use of Meta's services after receipt of a cease-and-desist letter violates
16  section 502."); *Rodriguez v. Google LLC*, 2025 WL 50425, at *8 (N.D. Cal. 2025) ("The Ninth
17  Circuit held that previously permitted use runs afoul of the CFAA (and therefore the CDAFA)
18  'when such permission has been revoked explicitly.'" (quoting *Power Ventures*, 844 F.3d at
19  1069)).  Here, Defendants accessed and used Instagram to promote their unauthorized services
20  after Meta sent them a cease-and-desist letter and revoked their access to Instagram on February
21  9, 2024.  *See* Compl. ¶¶ 40–45.

22          **3.      The Amount of Money at Stake Supports a Default Judgment.**

23          "Under the fourth *Eitel* factor, the Court must consider the amount of money at stake in
24  relation to the seriousness of Defendants' conduct." *Baskin-Robbins*, 2020 WL 2616576, at *9
25  (citing *Eitel*, 782 F.2d at 1471–72).  "[D]efault judgment may be appropriate where it is 'tailored
26  to the defendant's specific misconduct.'" *Id.* (brackets omitted) (quoting *Bd. of Trs. of the Sheet*
27  *Metal Workers Health Care Plan of N. Cal. v. Superhall Mech., Inc.*, 2011 WL 2600898, at *2
28  (N.D. Cal. 2011)).

DAVIS WRIGHT TREMAINE LLP

Although Meta is entitled to monetary damages, Meta does not seek them through this Motion. Rather, as set forth more fully below, Meta seeks injunctive relief and attorneys' fees and costs only. Accordingly, this factor strongly favors granting default judgment. *Sluchevsky*, 2020 WL 5823277, at *8 (finding the "fourth *Eitel* factor weigh[ed] in favor of granting the plaintiff's motion" when the plaintiff sought only injunctive relief and attorneys' fees and costs).

### 4. There Is No Dispute of Any Material Facts.

The fifth *Eitel* factor considers whether material facts are in dispute. *Baskin-Robbins*, 2020 WL 2616576, at *6. Here, there are none. "Upon the Clerk's entry of default, Defendants were 'deemed to have admitted all well-pleaded allegations' in the complaint." *Id.* at *9 (quoting *Geddes*, 559 F.2d at 560). Thus, the fifth factor favors entry of default judgment.

### 5. There Is No Evidence of Excusable Neglect in the Record.

The sixth *Eitel* factor considers whether default was entered as a result of excusable neglect by Defendants. *Baskin-Robbins*, 2020 WL 2616576, at *6. "This factor favors default judgment where the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." *Id.* at *9 (quotation omitted). Here, as explained above, Meta properly served Defendants via personal service through the Nye County Sheriff's Department at the Nevada Southern Detention Center. *See* Dkts. 8–10. In addition, Meta served the Clerk's Notice of Entry of Default, Dkt. 12, and Notice re: Default Judgment Procedure, Dkt. 13, on Defendants via mail. MacNaughton DJ Decl. ¶ 2. Defendants received ample notice of this lawsuit but failed to appear or otherwise defend themselves. Accordingly, "[t]here is no basis here to conclude that Defendants' default resulted from excusable neglect," and this factor strongly weighs in favor of the entry of default judgment. *Baskin-Robbins*, 2020 WL 2616576, at *9.

### 6. There Is No Likelihood of a Decision on the Merits.

The final *Eitel* factor balances the entry of default judgment against the preference for deciding cases on the merits. *Eitel*, 782 F.2d at 1472. A "defendant's failure to answer the complaint 'makes a decision on the merits impractical, if not impossible.'" *Baskin-Robbins*, 2020 WL 2616576, at *10 (quotation omitted). Indeed, "termination of a case before hearing the

NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANTS
Case No. 3:25-cv-01678-TSH

DAVIS WRIGHT TREMAINE LLP

merits is permissible when a defendant fails to defend an action." *Id.*  Given Defendant's failure to appear, "a decision on the merits is impossible." *Id.*  This factor favors the entry of default judgment.

### C.    Relief Sought

Meta does not seek any monetary damages in this Motion.  It seeks only attorneys' fees and costs, and injunctive relief.

#### 1.    Attorneys' Fees and Costs

A prevailing party may recover attorneys' fees and costs under Section 502.  Cal. Penal Code § 502(e)(2); *cf. Nguyen*, 2023 WL 8686913, at *1; *Sluchevsky*, 2020 WL 5823277, at *10. And courts in this District have awarded both fees and costs in granting default judgments based on Section 502.  *See, e.g.*, *Nguyen*, 2023 WL 8686913, at *1; *Sluchevsky*, 2020 WL 5823277, at *10.  Meta requests the attorneys' fees associated with Meta's pre-filing investigation of Defendants, filing and service of the complaint, and pursuit of Defendants' default and default judgment.  The Court should grant Meta's attorneys' fees and costs, which Meta will establish by separate motion and supporting evidence following resolution of this Motion.

#### 2.    Injunctive Relief

In addition to attorneys' fees and costs, "it is appropriate to grant an injunction on an application for default judgment" consistent with the demands of the Complaint.  *Craigslist, Inc. v. Realworks Grp., LLC*, 2009 WL 10692489, at *5 (N.D. Cal. 2009); *see also* Fed. R. Civ. P. 54(c).  Permanent injunctive relief is appropriate when: (1) the plaintiff risks suffering irreparable harm; (2) monetary remedies are inadequate to compensate for plaintiff's injury; (3) the balance of hardship favors the plaintiff; and (4) the public interest would be disserved by an injunction.  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Here, the factors favor an injunction.[3]

_____

[3] Specifically, Meta seeks an order restraining Defendants from: (a) accessing and using Meta's services, platforms, and computer systems; (b) creating or maintaining any Instagram accounts in violation of the Terms; (c) engaging in any activity that violates the Terms or facilitating others to do the same; (d) soliciting third parties to access Meta's platforms and computer systems on Defendants' behalf; (e) engaging in any activity that disrupts, diminishes the quality of, interferes with the performance of, or impairs the functionality of Meta's services, platforms, and computer

NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANTS
Case No. 3:25-cv-01678-TSH

As to the first factor, "[n]umerous courts have found that unauthorized access of computers . . . constitute[s] irreparable harm." *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 767, 782 (N.D. Cal. 2017). And "[i]rreparable harm may be established where there is the fact of an injury, such as that arising from a breach of contract, but where there is an inability to ascertain the amount of damage" attributable to, for example, "[t]he threat to Plaintiff's business." *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, 2020 WL 1812257, at *3 (N.D. Cal. 2020), *aff'd*, 20 F.4th 466 (9th Cir. 2021). Here, Defendants' continued access and use of Instagram to promote their unauthorized services after Meta sent a cease-and-desist letter and revoked their access to Instagram gives rise to irreparable injury. Compl. ¶¶ 28–45. Meta has suffered—and continues to suffer—irreparable harm to its reputation and goodwill as a result of Defendants' unauthorized access and use of Meta's platform that monetary damages cannot rectify. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm.").

As to the second factor, "not only has [Meta] suffered irreparable harm, it is very likely that in the absence of a permanent injunction, [Meta] will suffer irreparable harm again in the future." *Power Ventures*, 252 F. Supp. 3d at 783. Defendants' illicit conduct continued despite their receipt of Meta's cease-and-desist letter. Compl. ¶¶ 40–45. Absent an injunction, there is nothing to prevent Defendants from further attempts to access and use Meta's platform and services without authorization. Monetary damages, therefore, are inadequate to compensate Meta's injury. *See Power Ventures*, 252 F. Supp. 3d at 783 (money damages inadequate where "there is a 'reasonable likelihood of defendant's future violations'" (quotation omitted)).

As to the third factor, the balance of hardships tips sharply in Meta's favor. "Enjoining [Defendants'] violation of the Instagram Terms of Use presents little to no hardship on [them]." *Meta Platforms, Inc. v. Ates*, 2023 WL 4035611, at *9 (N.D. Cal. 2023), *report and recommendation adopted*, 2023 WL 4995717 (N.D. Cal. 2023); *see also Nguyen*, 2023 WL

systems; and (f) engaging in activity that violates Section 502. *See* Compl. at 17–18 (Request for Relief).

NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANTS
Case No. 3:25-cv-01678-TSH

8686924, at \*11 ("In contrast, a permanent injunction would only require Defendants to comply with the law."). On the other hand, Defendants forced Meta to incur costs to investigate and mitigate their repeated violations of the Terms. Defendants' unauthorized access and use of Instagram to sell and provide unauthorized services warrants an injunction.

As to the fourth factor, the public interest would be served by an injunction. Indeed, the public has a significant interest in enjoining a suspected abuser of Meta's platform from accessing Meta's products and distributing or monetizing any services constituting improper use of Meta's products. *Stackla, Inc. v. Facebook, Inc.*, 2019 WL 4738288, at \*6 (N.D. Cal. 2019) ("[Meta]'s ability to decisively police the integrity of its platform is without question a pressing public interest. In particular, the public has a strong interest in the integrity of [Meta]'s platforms, [Meta]'s policing of those platforms for abuses, and [Meta]'s protection of its users' privacy."). Particularly one who has pled guilty to a slate of federal crimes—including extortion, stalking, and money laundering—relating to his use of Instagram. *Qibaa*, Dkt. 40 (Feb. 21, 2025 Plea Agreement); *cf.* Compl. ¶ 5 & Ex. B.

The requested injunction is warranted.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant Meta's Motion and enter the proposed default judgment and permanent injunction filed concurrently herewith.

DATED: June 30, 2025                                    Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:    *s/ Bonnie MacNaughton*
       Bonnie MacNaughton

Attorney for Meta Platforms, Inc.

DAVIS WRIGHT TREMAINE LLP