UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| META PLATFORMS, INC., <br><br>    Plaintiff, <br><br>v. <br><br>IDRISS QIBAA, et al., <br><br>    Defendants. | Case No. 25-cv-01678-TSH <br><br>**REQUEST FOR REASSIGNMENT WITH REPORT & RECOMMENDATION RE: MOTION FOR DEFAULT JUDGMENT** <br><br>Re: Dkt. No. 16 |

## I. INTRODUCTION

Meta Platforms, Inc. alleges Idriss Qibaa and Unlocked4Life, LLC sold unauthorized Instagram services, including the ability to disable user accounts, user account reinstatement services intended to circumvent enforcement actions taken by Meta, and fake engagement services intended to artificially inflate followers on Instagram user accounts. Meta brings this action to stop Defendants' violations of Instagram's Terms of Use and Meta's Commercial Terms, as well as for breach of contract and violations of the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 (CDAFA). Pending before the Court is Meta's Motion for Default Judgment. ECF No 16. Defendants have neither opposed the motion nor appeared in this case. The undersigned finds this matter suitable for disposition without oral argument and **VACATES** the August 7, 2025 hearing. Civ. L.R. 7-1(b). As not all parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c), the undersigned requests this case be reassigned to a district judge for disposition. For the reasons stated below, the undersigned **RECOMMENDS** the District Court **GRANT** the motion.

## II. BACKGROUND

### A. Parties

Meta is a Delaware corporation with its principal place of business in Menlo Park, San Mateo County, California. Compl. ¶ 4, ECF No. 1. It owns and operates Instagram, a free photo and video sharing service on which users can upload photos and videos to Instagram and share them with others. *Id.* ¶ 14, ECF No. 1. Meta also owns and operates Facebook. *Id.* ¶ 15.

Idriss Qibaa is a resident of Las Vegas, Nevada, and the Managing Member of Unlocked. *Id.* ¶ 5 & Ex. A. Unlocked is a limited liability company registered in Henderson, Nevada, which offered and sold unauthorized Instagram account services including services to disable Instagram user accounts, among other services directed at Instagram users. *Id.* ¶ 6. Unlocked offered its unauthorized Instagram services on its domain unlocked4life.com. *Id.* Between May 3, 2012, and July 23, 2024, Defendants created and controlled at least 21 Instagram accounts. *Id.* ¶ 23.

### B. Instagram's Terms and Policies

Everyone who creates an account or uses Instagram must agree to Instagram's Terms and Policies (the Terms) and therefore has notice of the Terms.[1] *Id.* ¶ 17. The Terms prohibit users from doing "anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose," *id.* ¶ 18; accessing or attempting to access accounts in unauthorized ways, *id.* ¶ 19; and doing "anything to interfere with or impair the intended operation of [Instagram]," including "misusing any reporting, dispute, or appeals channel, such as by making fraudulent or groundless reports or appeals," *id.* ¶ 20. The Terms state that a person cannot use Instagram if Meta has "previously disabled your account for violation of law or any of our policies." *Id.* ¶ 21.

Meta has a variety of measures and tools in place to enforce the Terms, including content removal and account access restriction and termination. *Id.* ¶¶ 24–26. If Meta disables or restricts an Instagram account and the user believes the enforcement was by mistake, the user may appeal Meta's enforcement. *Id.* ¶ 27. Only Meta is authorized to reinstate accounts or account access or lift account restrictions after an enforcement. *Id.* At all relevant times, Defendants had notice of

---

[1] The Terms are located on the Instagram website at http://instagram.com/about/legal/terms/.

and were bound by the Terms.  *Id.* ¶ 22.

**C.     Defendants' Violations of the Terms**

   **1.     Defendants Offered for Sale and Sold Instagram Account Disablement Services in Violation of the Terms**

Defendants violated the Terms by offering for sale and selling Instagram account disablement services, as well as submitting deceptive and misleading requests through Meta's reporting channel to do so.  *Id.* ¶¶ 28–33.

Specifically, beginning no later than March 3, 2023, and continuing until at least August 14, 2024, Defendants violated the Terms by offering for sale and selling services to disable Instagram user accounts.  *Id.* ¶ 28.  Defendants also used their Instagram accounts to create multiple posts promoting their ability to disable Instagram user accounts.  *Id.* ¶ 29.

On or about November 14, 2023, Defendants submitted or caused to be submitted a deceptive and misleading request through Meta's external reporting channel falsely claiming that an Instagram Account (Account A) was violating Instagram's Terms and Policies.  *Id.* ¶ 30.  The false and misleading report caused Account A to be disabled that same day.  *Id.*  After Meta reinstated Account A on November 15, 2023, Defendants created or caused to be created multiple Instagram posts claiming credit for Account A's disablement.  *Id.*

On or about April 25, 2024, Defendants submitted or caused to be submitted a deceptive and misleading request through Meta's external reporting channel, falsely claiming that an Instagram account (Account B) was violating Instagram's Terms and Policies.  *Id.* ¶ 33.  The false and misleading report caused Account B to be disabled that same day.  *Id.*  After Meta reinstated Account B later that same day, on or about April 27 and June 3, Defendants posted to their Telegram channel, "Unlocked For Life," taking credit for disabling Account B and boasting that they "banned [Account B's] IG."  *Id.*

Defendants actively promoted their account disablement services.  *Id.* ¶¶ 31–32.  On January 18, 2024, Qibaa appeared on the "No Jumper" podcast in an episode titled "UNLOCKED Exposes The Instagram Ban/Unban Game & Making Millions off D*** Dealers."  *Id.* ¶ 31.  On the podcast, Qibaa promoted Unlocked and stated he profits by extorting certain Instagram users

by disabling their user accounts and charging those users to reinstate their accounts. *Id*. Qibaa claimed that over 200 people pay him monthly to maintain access to their user accounts and that he makes more than $600,000 a month offering these services. *Id*. Defendants also promoted their account disablement services on Unlocked's website and their Telegram channel. *Id*. ¶ 32. On April 24, 2024, in a post to their Telegram channel, Defendants directed customers seeking Instagram banning services to "[s]end a screenshot of the target. *Id*. We need to see the page to quote smoking it." *Id*. ¶ 32 & Ex. C.

### 2. Defendants Offered for Sale Other Unauthorized Instagram Services in Violation of the Terms

In addition to selling the ability to disable Instagram user accounts, Defendants offered a menu of other services that violated Instagram's Terms and Policies. *Id.* ¶ 34. For example, Defendants sold account reinstatement services that re-enabled disabled or otherwise restricted user accounts and sold fake Instagram engagement. *Id*. Defendants promoted the sale of these services on their Instagram accounts, Unlocked's website (unlocked4life.com), and on their Telegram account. *Id*.

On or about January 9, 2024, Defendants created or caused to be created Instagram posts on an Instagram account with the username "unlockmyinsta" that promoted Unlocked's services, including Instagram account bans, account reinstatements, and fake engagement, among other services. *Id.* ¶ 35. Defendants also claimed to provide similar services directed to users of other platforms including X, YouTube, TikTok, and Telegram. *Id*. And they offered their "UNLOCKED PROTECTION," "a "whitelist[ing]" service for Instagram, Snapchat, and Telegram users for $750 per year. *Id*. ¶ 36.

Through Unlocked's website, Defendants offered to provide services to reinstate disabled or otherwise restricted user accounts. *Id.* ¶¶ 37–38. As of at least January 2024, Defendants' website directed customers to "DM TO GET BACK YOUR . . . GRAMS," which meant customers should direct message Defendants to re-enable a disabled Instagram account." *Id*. ¶ 37. Through Unlocked's website, Defendants also offered to artificially inflate the number of followers on Instagram accounts: 10,000 followers for $200, 25,000 followers for $350, 50,000

4

followers for $600, and 100,000 followers for $900. *Id*. ¶ 38. And Defendants offered their customers the opportunity to join their "ELITE SALES GROUP" (called "TEAM UNLOCKED") where members would be provided access to sell Unlocked's unauthorized Instagram services, among other things. *Id*. ¶ 39. To access TEAM UNLOCKED, Defendants asked customers to pay them a one-time fee of $7,500. *Id*. Defendants would then provide fake engagement including 25,000 followers and "24/7 ACCESS" to Qibaa, among other things. *Id*.

### 3. Cease and Desist Letter

On February 9, 2024, Meta sent a cease-and-desist letter to Defendants for violating Instagram's Terms. *Id.* ¶ 40 & Ex. D. At that time, Meta also disabled all known Facebook and Instagram accounts associated with Defendants. *Id*. ¶ 40. In the cease-and-desist letter, Meta provided the URL where the Terms can be viewed and demanded that Defendants stop violating the Terms, including by offering unauthorized Instagram account services to disable Instagram user accounts; reinstating disabled or otherwise restricted user accounts; and artificially inflating followers on Instagram. *Id*. ¶ 41. The letter also informed Defendants that Meta had revoked Defendants' licenses to access Facebook and Instagram, and that Defendants were no longer authorized to access Facebook or Instagram "for any reason whatsoever." *Id*. ¶ 41 & Ex. D. Yet Defendants continued to access Instagram and Facebook after that revocation in violation of the Terms. *Id*. ¶¶ 19, 21, 42–45.

For example, beginning on or about April 1, 2024, Defendants took control of an Instagram user account with the username "nabdjbbzbsjsjsjsb." *Id*. ¶ 42. Defendants changed the username of the account to "idrissocean." *Id*. Meta disabled Defendants' "idrissocean" user account on or about May 8, 2024. *Id*. On or about April 25, 2024, Defendants also submitted or caused to be submitted a deceptive and misleading request through Meta's external reporting channel in violation of Instagram's Terms, which resulted in Meta directly disabling Account B, discussed above. *Id*. ¶ 43. On July 17, 2024, Defendants created an Instagram user account with the username "unlockedreborn." *Id*. ¶ 44. On July 21, 2024, Defendants created an Instagram post through that account promoting and directing users to a Telegram channel where Defendants sold unauthorized Instagram account services. *Id*. On or about July 22, 2024, Meta disabled the

5

"unlockedreborn" user account. *Id*. And on July 19, 2024, Defendants created an Instagram user account with the username "paid4lifes." *Id*. ¶ 45. On or about July 23, 2024, Meta disabled the "paid4lifes" account. *Id*.

**D.   Procedural Background**

On February 18, 2025, Meta filed the present complaint alleging two causes of action: (1) breach of contract; and (2) violation of the CDAFA. On February 25, 2025, Meta served both Qibaa and Unlocked via personal service through the Nye County Sheriff's Department at the Nevada Southern Detention Center, 2190 E. Mesquite Avenue, Pahrump, Nevada 89060, where Qibaa was being held pending criminal charges.[2] ECF Nos. 8-9; *see also* ECF No. 11-1 (MacNaughton Decl.), Ex. A. Qibaa accepted service as an individual and as a managing member of Unlocked. MacNaughton Decl., Ex. A. Because Defendants did not respond to the Complaint by their March 18, 2025 deadline, Meta requested entry of default against Defendants on March 25, 2025. ECF No. 11. The Clerk entered default three days later. ECF No. 12.

Meta filed the present motion on June 30, 2025.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case. "The district court's decision whether to enter default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

At the default judgment stage, the factual allegations of the complaint, except those concerning damages, "together with other competent evidence submitted" are deemed admitted by the non-responding parties. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1000 (N.D. Cal. 2001); *see also Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002)

---

[2] On August 6, 2024, Qibaa was indicted by a grand jury in the District of Nevada and charged with two counts of violating 18 U.S.C. § 875 for sending messages threatening to injure or kill two victims. Compl., Ex. B; *see generally United States v. Idriss Qibaa*, Case 2:24-cr-00175-RFB-MDC (D. Nev. Aug. 6, 2024). The government's complaint includes multiple allegations that Qibaa offered and sold unauthorized Instagram services and harassed Instagram users. On February 21, 2025, Qibaa pleaded guilty to extortion, money laundering, stalking, and interstate communications containing a threat to injure. 24-cr-00175, ECF No. 40. Qibaa was sentenced in May 2025 to three years of incarceration followed by three years of supervised release. *Id.*, ECF No. 57.

6

("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."). "However, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (citation and quotation omitted)). Therefore, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); *accord DIRECTV*, 503 F.3d at 854. Further, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

In determining whether default judgment is appropriate, the Ninth Circuit has enumerated the following factors for courts to consider:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## IV.   DISCUSSION

### A.   Jurisdiction and Service of Process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). "[T]he district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (considering subject matter jurisdiction on a 12(b)(1) motion).

#### 1.   Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court may

7

dismiss an action on its own motion if it finds that it lacks subject matter jurisdiction. *Fiedler v. Clark*, 714 F.2d 77, 78-79 (9th Cir. 1983); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The Court has diversity jurisdiction under 28 U.S.C. § 1332 because Meta is in California, Defendants are in Nevada, and the amount in controversy exceeds $75,000. Compl. ¶¶ 4–6, 9; *see Naffe v. Frey*, 789 F.3d 1030, 1039 (9th Cir. 2015) ("To establish federal jurisdiction under § 1332(a)(1), the proponent must allege (1) the parties are completely diverse, and (2) the amount in controversy exceeds $75,000.").

### 2. Personal Jurisdiction

To enter default judgment, the Court must have a basis for the exercise of personal jurisdiction over the defendants in default. *In re Tuli*, 172 F.3d at 712. "Without a proper basis for [personal] jurisdiction, or in the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process." *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007). Traditional bases for conferring a court with personal jurisdiction include a defendant's consent to jurisdiction, personal service of the defendant within the forum state, or a defendant's citizenship or domicile in the forum state. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011).

A defendant may consent to a court's personal jurisdiction through a forum selection clause, provided the defendant "agrees to be so bound." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007) (citations omitted). Forum selection clauses are to be specifically enforced unless the party opposing the clause clearly shows "that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 512 (9th Cir. 1988) (internal quotation and citation omitted). "Courts routinely uphold forum selection clauses in form contracts between consumers and businesses." *Thomas v. Facebook, Inc.*, 2018 WL 3915585, at *4 (E.D. Cal. Aug. 15, 2018) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587 (1991)).

Here, Defendants consented to the personal jurisdiction of this Court when they agreed to the Terms by creating and controlling multiple Instagram accounts. As courts in this District have held, assent to the Terms, which contains a forum selection clause, constitutes consent to this Court's jurisdiction. *See, e.g., Facebook, Inc. v. Solonchenko*, 2022 WL 18491616, at *3 (N.D. Cal. Dec. 29, 2022), *report and recommendation adopted*, 2023 WL 420677 (N.D. Cal. Jan. 26, 2023) (holding consent to personal jurisdiction under Meta's prior, almost-identical forum selection clause); *Meta Platforms, Inc. v. Nguyen*, 2023 WL 8686924, at *5 (N.D. Cal. Nov. 21, 2023), *report and recommendation adopted*, 2024 WL 6047147 (N.D. Cal. Feb. 23, 2024) (same).

### 3. Service of Process

Personal jurisdiction also requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). As noted above, on February 25, 2025, Meta served both Qibaa and Unlocked via personal service through the Nye County Sheriff's Department at the Nevada Southern Detention Center. ECF Nos. 8–9, 11-1. Qibaa accepted service as an individual and as a managing member of Unlocked. MacNaughton Decl., Ex. A. Because Defendants did not respond to the complaint, Meta requested entry of default against Defendants on March 25, 2025, ECF No. 11, and the Clerk entered default three days later, ECF No. 12. As such, Defendants have been properly served. *See* Fed. R. Civ. P. 4(e)(2)(A) (providing for service on an individual by delivering summons and complaint "to the individual personally"); Fed. R. Civ. P. 4(h)(1)(B) (providing for service on a corporation by delivering summons and complaint to "managing or general agent").

## B. *Eitel* Factors

Applying the seven *Eitel* factors, the undersigned finds default judgment is warranted in favor of Meta.

### 1. The Possibility of Prejudice

The first factor the Court considers is the possibility of prejudice if a default judgment is not entered. *Eitel*, 782 F.2d at 1471-72. This factor weighs in favor of default judgment "when a defendant has failed to appear or defend against a suit, and the plaintiffs could not otherwise seek

9

relief." *Vietnam Reform Party v. Viet Tan – Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (citations omitted); *IO Grp., Inc. v. Jordon*, 708 F. Supp. 2d 989, 997 (N.D. Cal. 2010) (prejudice exists where denying the requested default judgment would leave the plaintiff without a proper remedy). Because Defendants have not appeared in this action, Meta will be unable to prevent Defendants from further violating its Terms or engaging in other disruptive conduct unless the Court grants its motion. This fact favors granting default judgment under the first *Eitel* factor. *See Nguyen*, 2023 WL 8686924, at *6 (default judgment proper where Meta would otherwise be unable to prevent defendants from further violating its Terms).

### 2. Substantive Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors focus on the merits of the substantive claims and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471-72. "These two factors are often analyzed together and require courts to consider whether a plaintiff has 'state[d] a claim on which [it] may recover.'" *Vietnam Reform Party*, 416 F. Supp. 3d at 962 (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002)). "Of all the *Eitel* factors, courts often consider the second and third factors to be 'the most important.'" *Id.* (quoting *Sanrio, Inc. v. Jay Yoon*, 2012 WL 610451, at *4 (N.D. Cal. Feb. 24, 2012)).

#### a. Breach of Contract

Under California law, the "cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 n.6 (2004).

First, valid contracts exist between Meta and Defendants. "Defendants agreed to the . . . Instagram Terms of Service and Use by accessing, creating, and using . . . Instagram accounts." *Meta Platforms, Inc. v. Arowokoko*, 2023 WL 3035454, at *7 (N.D. Cal. Feb. 24, 2023), *report and recommendation adopted*, 2023 WL 4013626 (N.D. Cal. May 9, 2023) (collecting cases involving Facebook, Yelp, and Craigslist); *see* Compl. ¶¶ 17, 22–23; Andre Decl. ¶ 3, ECF No. 16-2 ("Meta owns and operates several products, including Instagram. Every user who registers for, uses, and continues to use Instagram must agree to Instagram's Terms and Policies."). The

10

Terms prohibit users from doing anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose. Compl. ¶ 18. The Terms also prohibit accessing or attempting to access accounts in unauthorized ways; doing anything to interfere with or impair the intended operation of Instagram; and misusing any reporting, dispute, or appeals channel. *Id*. ¶¶ 19–20. And the Terms prohibit someone from using Instagram if Meta has previously disabled that person's user account for violating any law or Meta's policies. *Id*. ¶¶ 21, 51.

Second, Meta performed its end of the bargain by "allowing Defendants to use . . . Instagram, until Meta became aware that they were in breach of the . . . Instagram Terms." *Arowokoko*, 2023 WL 3035454, at *7; *see* Compl. ¶¶ 23, 28–40.

Third, Defendants breached the Terms by offering for sale and selling unauthorized Instagram services including services to disable Instagram user accounts; misusing Meta reporting, dispute, or appeal channels in furtherance of their scheme; and creating multiple new Instagram accounts and continuing to use Instagram accounts after Meta sent the cease-and-desist letter informing Defendants they were no longer authorized to access Instagram. *See Arowokoko*, 2023 WL 3035454, at *7 (finding breach where defendants mislead and defrauded users, including by creating multiple Facebook accounts and continuing to use Facebook after Meta disabled their accounts for violating the Facebook Terms and continuing to use Instagram after Meta disabled their account for violating the Instagram Terms); Compl. ¶¶ 28–45, 50–51.

Finally, as a result of Defendants' actions, Meta suffered damages. Compl. ¶ 52. Among other things, Meta expended resources to investigate, remediate, and respond to Defendants' breaching conduct. *Id*.; *see Arowokoko*, 2023 WL 3035454, at *8 (finding damages where Meta alleged it had incurred damages "in excess of $75,000, including for significant time and expense spent investigating and taking enforcement actions against Defendants") (citing *Speirs v. BlueFire Ethanol Fuels, Inc.*, 243 Cal. App. 4th 969, 989 (2015)); *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co., Ltd.*, 2021 WL 5707741, at *5 (N.D. Cal. Oct. 21, 2021), *report and recommendation adopted*, 2021 WL 5707740 (N.D. Cal. Nov. 16, 2021) (Meta sufficiently pled damages element of contract claim by alleging that it had to "expend time and resources to investigate" and remediate prohibited activities); *Facebook, Inc. v. Sluchevsky*, 2020 WL 5823277,

11

at *1 (N.D. Cal. Aug. 28, 2020), *report and recommendation adopted*, 2020 WL 5816578 (N.D. Cal. Sept. 30, 2020) (same).

Accordingly, the undersigned finds Meta has established its breach of contract claim.

### b. California's Comprehensive Computer Data Access and Fraud Act

The CDAFA prohibits the unauthorized access and use of any data from a computer, computer system, or computer network. Cal. Penal Code § 502. "Section 502 is an anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose." *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1032 (N.D. Cal. 2014). The Ninth Circuit has held that continued use of Meta's services after receipt of a cease-and-desist letter violates Section 502. *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016) ("[W]hen Facebook sent the cease and desist letter, Power, as it conceded, knew that it no longer had permission to access Facebook's computers at all. Power, therefore, knowingly accessed and without permission took, copied, and made use of Facebook's data."); *see also Meta Platforms, Inc. v. Ates*, 2023 WL 4035611, at *6 (N.D. Cal. May 1, 2023), *report and recommendation adopted*, 2023 WL 4995717 (N.D. Cal. June 27, 2023) ("The Ninth Circuit has held that continued use of Meta's services after receipt of a cease-and-desist letter violates section 502."); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1107 (N.D. Cal. 2025) ("The Ninth Circuit held that previously permitted use runs afoul of the CFAA (and therefore the CDAFA) 'when such permission has been revoked explicitly.'") (quoting *Power Ventures*, 844 F.3d at 1069)).

Here, Defendants accessed and used Instagram to promote their unauthorized services after Meta sent them a cease-and-desist letter and revoked their access to Instagram on February 9, 2024. *See* Compl. ¶¶ 40–45. Accordingly, the undersigned finds Meta has established its CDAFA claim.

### 3. The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, "the Court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Dr. JKL Ltd., v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1050 (N.D. Cal. 2010) (citation and quotation marks omitted). When the amount

12

at stake is substantial or unreasonable in light of the allegations in the complaint, default judgment is disfavored. *See Eitel*, 782 F.2d at 1472 (affirming the denial of default judgment where the plaintiff sought $3 million in damages and the parties disputed material facts in the pleadings). "However, when the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014).

Here, as Meta seeks injunctive relief and attorneys' fees and costs only, this factor favors granting default judgment. *See Sluchevsky*, 2020 WL 5823277, at *8 (finding the "fourth *Eitel* factor weigh[ed] in favor of granting the plaintiff's motion" when the plaintiff sought only injunctive relief and attorneys' fees and costs) (citing *MERSCORP Holdings, Inc. v. MERS, Inc.*, 2017 WL 1709351, at *3 (N.D. Cal. May 3, 2017)).

### 4. The Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case. *Eitel*, 782 F.2d at 1471-72. However, upon entry of default, the defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint. *DIRECTV, Inc.*, 503 F.3d at 851 (citing Fed. R. Civ. P. 55(a)). Moreover, as outlined above, Meta has provided the Court with well-pleaded allegations supporting its claims. Accordingly, this factor weighs in favor of default judgment.

### 5. Whether Default was Due to Excusable Neglect

The sixth *Eitel* factor examines whether the defendant's failure to respond to the complaint was the result of excusable neglect. *Eitel*, 782 F.2d at 1471-72. Here, despite being properly served with the summons and complaint and entry of default at email addresses known to be used by them, Defendants have "made no appearance in this [action]." *Yelp Inc.*, 70 F. Supp. 3d at 1100. Nothing in the record suggests Defendants had an excusable reason for failing to appear.

### 6. Policy Favoring Deciding a Case on its Merits

The last *Eitel* factor examines whether the policy of deciding a case based on the merits precludes entry of default judgment. *Eitel*, 782 F.2d at 1472. In *Eitel*, the Ninth Circuit admonished that "[c]ases should be decided on their merits whenever reasonably possible." *Id.*

13

"The existence of Federal Rule of Civil Procedure 55(b), however, shows that this policy is not dispositive." *McMillan Data Commc'ns, Inc. v. AmeriCom Automation Servs., Inc.*, 2015 WL 4380965, at *11 (N.D. Cal. July 16, 2015) (citing *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996)). Further, "deciding the case on the merits is impossible where a party refuses to participate." *Vietnam Reform Party*, 416 F. Supp. 3d at 970. Thus, because Defendants made no effort to respond to communication attempts by Meta and in no way participated in the proceedings, "[t]his factor thus weighs against, but does not preclude, entry of default judgment." *Id.*

### 7. Summary of the *Eitel* Factors

In sum, the majority of the *Eitel* factors weigh in favor of granting default judgment. Accordingly, the undersigned **RECOMMENDS** the District Court **GRANT** the motion and enter default judgment against Defendants.

## C. Relief Sought

The Court next turns to the relief Meta seeks. Once liability is established, the plaintiff must then establish that the requested relief is appropriate. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). A "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### 1. Attorneys' Fees and Costs

Meta requests the attorneys' fees associated with its pre-filing investigation of Defendants, filing and service of the complaint, and pursuit of Defendants' default and default judgment. Mot. at 22. California Penal Code section 502 permits a prevailing party to recover attorneys' fees. Cal. Penal Code § 502(e)(2) ("In any action brought pursuant to this subdivision the court may award reasonable attorney's fees."); *see, e.g., Sluchevsky*, 2020 WL 5823277, at *10; *Facebook, Inc. v. Power Ventures, Inc.*, 2017 WL 3394754, at *6 (N.D. Cal. Aug. 8, 2017). Accordingly, the undersigned **RECOMMENDS** the Court grant Meta's request for attorneys' fees and costs, which Meta states it will establish by separate motion and supporting evidence following resolution of this motion.

14

### 2. Injunctive Relief

Meta also seeks injunctive relief, which is authorized under the CDAFA. *See* Cal. Penal Code § 502(e)(1). Meta is also entitled to injunctive relief for its breach of contract claim under California law. *See Arowokoko*, 2023 WL 3035454, at *9; *Twitch Interactive, Inc. v. Johnston*, 2019 WL 3387977, at *12 (N.D. Cal. July 26, 2019) (citing *DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 721–23 (2009)). Meta seeks an order restraining Defendants from: (a) accessing and using Meta's services, platforms, and computer systems; (b) creating or maintaining any Instagram accounts in violation of the Terms; (c) engaging in any activity that violates the Terms or facilitating others to do the same; (d) soliciting third parties to access Meta's platforms and computer systems on Defendants' behalf; (e) engaging in any activity that disrupts, diminishes the quality of, interferes with the performance of, or impairs the functionality of Meta's services, platforms, and computer systems; and (f) engaging in activity that violates Section 502. *See* Compl. at 17–18 (Request for Relief).

To obtain permanent injunctive relief, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Court has discretion to grant or deny permanent injunctive relief. *Id.* The undersigned finds these factors, on balance, support issuing a permanent injunction.

#### a. Irreparable Injury

"Numerous courts have found that unauthorized access of computers and the acquisition of data . . . constitute[s] irreparable harm." *Facebook, Inc. Power Ventures*, 252 F. Supp. 3d 765, 782 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019). And "[i]rreparable harm may be established where there is the fact of an injury, such as that arising from a breach of contract, but where there is an inability to ascertain the amount of damage" attributable to, for example, "[t]he threat to Plaintiff's business." *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, 2020 WL 1812257, at *3 (N.D. Cal. Apr. 9, 2020), *aff'd*, 20 F.4th 466 (9th Cir. 2021). Here, Defendants'

15

1  continued access and use of Instagram to promote their unauthorized services after Meta sent a
2  cease-and-desist letter and revoked their access to Instagram gives rise to irreparable injury.
3  Compl. ¶¶ 28–45.  Meta has suffered—and continues to suffer—irreparable harm to its reputation
4  and goodwill as a result of Defendants' unauthorized access and use of Meta's platform that
5  monetary damages cannot rectify.  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d
6  832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill
7  certainly supports a finding of the possibility of irreparable harm.").

### b.  Inadequacy of Monetary Damages

9  As to the second factor, "not only has [Meta] suffered irreparable harm, it is very likely
10  that in the absence of a permanent injunction, [Meta] will suffer irreparable harm again in the
11  future."  *Power Ventures*, 252 F. Supp. 3d at 783.  The undersigned notes that Defendants' illicit
12  conduct continued despite their receipt of Meta's cease-and-desist letter.  Compl. ¶¶ 40–45.
13  Absent an injunction, there is nothing to prevent Defendants from further attempts to access and
14  use Meta's platform and services without authorization.  Monetary damages, therefore, are
15  inadequate to compensate Meta's injury.  *See Power Ventures*, 252 F. Supp. 3d at 783 (money
16  damages inadequate where "there is a reasonable likelihood of defendant's future violations")
17  (quotations omitted); *Sluchevsky*, 2020 WL 5823277, at *9 ("Where defendants' conduct indicates
18  there is a 'reasonable likelihood of defendant's future violations,' . . . and defendants retain the
19  software, tools or means at issue to continue their harmful behavior, this moves *eBay*'s second
20  factor in favor of granting a permanent injunction.") (quoting *Pyro Spectaculars N., Inc. v. Souza*,
21  861 F. Supp. 2d 1079, 1092 (E.D. Cal. 2012)).  As such, the undersigned finds Meta has
22  established that "remedies available at law, such as monetary damages, are inadequate to
23  compensate" for the harm it has suffered regarding its ability to prevent Defendants from further
24  attempts to access and use its platform and services without authorization.  *eBay*, 547 U.S. at 391.

### c.  Balance of Hardships

26  The balance of hardships also tips in Meta's favor.  Meta "has suffered harm because of
27  Defendants' illegal conduct, and absent a permanent injunction face the probability of Defendants
28  again engaging in similar conduct.  In contrast, a permanent injunction would only require

1  Defendants to comply with the law. This balance, therefore, weighs in favor of granting a

2  permanent injunction." *Sluchevsky*, 2020 WL 5823277, at *9; *Ates*, 2023 WL 4035611, at *9

3  ("Enjoining [defendants'] violation of the Instagram Terms of Use presents little to no hardship on

4  [them]."); *Nguyen*, 2023 WL 8686924, at *11 ("In contrast, a permanent injunction would only

5  require Defendants to comply with the law."). On the other hand, Defendants forced Meta to incur

6  costs to investigate and mitigate their repeated violations of the Terms. Defendants' unauthorized

7  access and use of Instagram to sell and provide unauthorized services warrants an injunction.

### d.     Public Interest

The public interest would be served by an injunction. Indeed, the public has a significant interest in enjoining a suspected abuser of Meta's platform from accessing Meta's products and distributing or monetizing any services constituting improper use of Meta's products. *See Stackla, Inc. v. Facebook, Inc.*, 2019 WL 4738288, at *6 (N.D. Cal. Sept. 27, 2019) ("[Meta]'s ability to decisively police the integrity of its platform is without question a pressing public interest. In particular, the public has a strong interest in the integrity of [Meta]'s platforms, [Meta]'s policing of those platforms for abuses, and [Meta]'s protection of its users' privacy."); *Sluchevsky*, 2020 WL 5823277, at *9. As such, the undersigned finds a permanent injunction would advance a cognizable public interest.

In sum, the undersigned finds each of the factors supports granting a permanent injunction in this case. The undersigned therefore recommends the Court grant Meta's request for permanent injunctive relief against Defendants.

### V.     CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** the District Court **GRANT** Plaintiff Meta Platforms, Inc.'s motion for default judgment and enter judgment against Defendants Idriss Qibaa and Unlocked4Life, LLC. The undersigned **FURTHER RECOMMENDS** the Court **GRANT** Meta's request for a permanent injunction as follows:

Defendants Idriss Qibaa and Unlocked4Life, LLC, and any of their agents, servants, employers, successors, and assigns, and all other persons acting in concert or conspiring with any of them or who are affiliated with Defendants, are PERMANENTLY ENJOINED and

RESTRAINED from:

    a) Accessing, attempting to access, or using Meta's services, platforms, or computer systems, including Instagram or Facebook, for any purpose whatsoever;

    b) Creating or maintaining any Instagram accounts in violation of the Instagram Terms of Use;

    c) Engaging in any activity or facilitating others to do the same that violates the Instagram Terms of Use;

    d) Soliciting third parties to access Meta's platforms or computer systems on Defendants' behalf;

    e) Engaging in any activity that disrupts, diminishes the quality of, interferes with the performance of, or impairs the functionality of Meta's computers, computer system, or computer network or service; and

    f) Engaging in any activity that violates the California Comprehensive Computer Data Access and Fraud Act (California Penal Code § 502).

The undersigned **FURTHER RECOMMENDS** the Court **GRANT** Meta's request for attorneys' fees and costs, which Meta must establish by separate motion and supporting evidence.

Meta shall serve a copy of this Report and Recommendation upon Defendants and file proof of service thereafter. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a party may serve and file any objections within 14 days after being served. Failure to file objections within the specified time may waive the right to appeal the district court's order.

**IT IS SO RECOMMENDED.**

Dated: August 1, 2025

THOMAS S. HIXSON
United States Magistrate Judge